[Cite as *B.C. v. A.S.*, 2014-Ohio-1326.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

B. C.

     Appellee

     v.

A. S.

     Appellant

C.A. No.     13CA0020-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No. 12DV0267

DECISION AND JOURNAL ENTRY

Dated: March 31, 2014

HENSAL, Judge.

{¶1} Appellant, A.S., appeals a domestic violence civil protection order issued by the Medina County Court of Common Pleas, Domestic Relations Division. For the reasons set forth below, this Court reverses and remands the matter to the trial court with instructions to vacate the domestic violence civil protection order.

I.

{¶2} A.S. and B.C. are the parents of two minor daughters. The children lived with their mother, B.C., their step-father, and their half-sister. The parties were involved in a separate case in the same court that involved custody of and visitation with the children. A.S., the children's father, had supervised visitation with his daughters that took place at the Supervised Parenting Time and Exchange Center ("Center").

{¶3} B.C. sought a domestic violence civil protection order ("DVCPO") for her entire family, which included her husband, the couple's minor child, and the daughters fathered by A.S.

The trial court granted the petition after holding an ex parte hearing. After holding a full hearing on the petition, the court issued the DVCPO. A.S. filed an appeal, and raises three assignments of error. For ease of analysis, this Court rearranges and combines his assignments of error.

II.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED BY ISSUING A DOMESTIC VIOLENCE CIVIL PROTECTION ORDER AS (SIC) AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED IN THIS MATTER.

{¶4} A.S. argues that, because B.C. failed to present evidence that he threatened force or that any of the protected parties had a reasonable fear of imminent serious physical harm, the trial court's decision to grant her petition for a DVCPO was against the manifest weight of the evidence. While A.S.'s assignment of error is couched in terms of challenging the manifest weight of the evidence, the substance of his argument suggests that B.C. did not produce sufficient evidence of domestic violence. As such, this Court will analyze his argument using the sufficiency standard. *See A.S. v. P.F.*, 9th Dist. Lorain No. 13CA010379, 2013-Ohio-4857, ¶ 4.

{¶5} We initially note that Civil Rule 65.1 authorizes a court to refer the proceedings concerning civil protection orders to a magistrate. Civ.R. 65.1(F)(1). "According to Civ.R. 65.1(F)(3), * * * civil protection orders are not 'magistrate's order[s]' as contemplated by Civ.R. 53(D) and are not subject to the requirements of Civ.R. 53 related to magistrate's orders." *R.C. v. J.G.*, 9th Dist. Medina No. 12CA0081-M, 2013-Ohio-4265, ¶ 5. The trial court may adopt the magistrate's decision after determining that there is no error of law or other defect evident on the face of the order. Civ.R. 65.1(F)(3)(c)(ii). "A civil protection order is final and appealable and may be reviewed on appeal with or without objections being filed in the trial court." *R.C.* at ¶ 5;

Civ.R. 65.1(G). In this case, the trial court approved and adopted the magistrate's order granting the DVCPO on the same date it was issued. Neither party filed objections, and it is from this final and appealable order that A.S. appeals. Civ.R. 65.1(G).

{¶6} In addressing the issue of whether B.C. produced sufficient evidence of domestic violence, "we must determine whether, viewing the evidence in the light most favorable to [B.C.], a reasonable trier of fact could find that the petitioner demonstrated by a preponderance of the evidence that a civil protection order should issue." *R.C.* at ¶ 7, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus and *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 11. "[S]ufficiency is a test of adequacy." *Eastley* at ¶ 11, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶7} In order to grant a DVCPO, the court must conclude that the petitioner has demonstrated by a preponderance of the evidence that the petitioner and/or the petitioner's family or household members are in danger of domestic violence. *Schultz v. Schultz*, 9th Dist. Medina No. 09CA0048-M, 2010-Ohio-3665, ¶ 5, quoting *Felton v. Felton*, 79 Ohio St.3d 34 (1997), paragraph two of the syllabus. The DVCPO in the instant case was issued pursuant to R.C. 3113.31. This statute defines "[d]omestic violence" as the occurrence of one or more of the followings acts against a family or household member:

> (a) Attempting to cause or recklessly causing bodily injury; (b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code; (c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code; (d) Committing a sexually oriented offense.

R.C. 3113.31(A)(1).

{¶8} B.C. testified that she filed the DVCPO on behalf of herself, her husband and her children because A.S made several "serious threats" while at the Center for visitation with his

daughters. According to B.C., on October 19, 2012, she received reports from the Center that detailed comments A.S. allegedly made to the staff and his children that he was going to "beat up" B.C.'s husband, that B.C. and her husband would "get what's coming to them" and that his daughters would "get out of that [C]enter soon." B.C. was concerned about the comment regarding her daughters not having to go to the Center because of an incident in 2010 wherein A.S. allegedly did not return the children to her after his visitation. B.C. testified that, during the 2010 incident, A.S. told her "[g]ood luck" in finding them. She had to call the police for assistance in locating and returning the children to her. To corroborate her testimony, B.C. offered into evidence the "Call [f]or Service Report" from the police department that handled the incident. She admitted this incident occurred prior to the filing of the custody and visitation case.

{¶9} B.C. also testified about an incident that allegedly occurred on October 24, 2012, after a court hearing in the parties' custody and visitation case. According to B.C., after the hearing, A.S. walked past her and her husband and "mumbled things" to her husband. Due to the incident, they requested a police escort to their car. When they went to the parking lot, A.S. was sitting in his vehicle, which was parked behind their vehicle, and appeared to be waiting for them. B.C. testified that the police officer stood there and ensured they could leave without incident.

{¶10} In addition, B.C. offered into evidence the Magistrate's Order entered after the October 24, 2012, hearing. The magistrate stated in the Order that "[t]he written reports from the Supervised Parenting Time Center were disturbing to say the least." The Order referenced reports from the Center that supposedly detail A.S. not following the rules and becoming "belligerent" toward the staff when they advised him about the rules. While the Order states that

"Father has made inappropriate comments and statements in front of the children and staff," it does not set forth the nature of the alleged "inappropriate comments and statements." This Court is unable to discern from the Order whether A.S.'s "inappropriate comments and statements" were threats of violence, and if they were, to whom the threats were directed.

{¶11} B.C. further testified that her oldest daughter started seeing a counselor after the supervised visits began because she was having a "hard time." She offered into evidence a letter from the counselor to the child's pediatrician that referenced "father sharing disturbing information with [the daughter] at supervised visitation." The letter does not set forth the nature of the "disturbing information."

{¶12} B.C. also testified that, after the filing of the petition and approximately six weeks before the full hearing, A.S. trespassed on her property on Christmas morning. According to B.C., she contacted the police and a warrant was issued for his arrest.

{¶13} B.C. maintained that A.S. has threatened her for years. When asked by the magistrate about the nature of the alleged threats against her, other than those directed at her husband, B.C. replied: "[W]e're going to get what we have coming to us. We're going to get what we deserve, and he's telling them to the kids, too, which makes them upset. * * * He's still threatening us in front of these people numerous times, many times it has in there. It just scares me * * * makes me really nervous * * *." She acknowledged, however, that she never heard him make any threats of physical violence against the children. Further, while B.C. testified that A.S. has threatened her with physical violence, she could not provide any details as to the exact nature of the threats or when they specifically occurred.

{¶14} Kent Patterson, chief of police for the village where B.C. and her family live, also testified at the hearing. According to Chief Patterson, B.C. contacted the police numerous times

concerning "fear[ ] for her well-being and the well-being of her children and husband." He testified that B.C. received threatening text messages and phone calls wherein A.S. used "swear words and things threatening her, threatening to lose the children, threatening to come down and take the children * * *." He further testified that any threats of physical violence were directed at B.C.'s husband; specifically, "threats [that A.S.] would come down and take care of him." Chief Patterson acknowledged that "it's all very general," but that the threats had occurred for years.

{¶15} Finally, B.C.'s husband testified that A.S. has threatened them multiple times and that the threats made the family "nervous." He described declining to work extra hours so that the children were not left home alone and meeting his oldest step-daughter at her bus stop for fear that A.S. was going to be there to take her. According to B.C.'s husband, on several occasions, his step-daughters were upset after visitation with their father on account of the things he said to them. He further testified that A.S. threatened to kill him on multiple occasions, the last time being during the summer of 2011 when A.S. called him and made threats that he would come to his home. B.C.'s husband acknowledged that A.S. never threatened physical violence against his children.

{¶16} The magistrate found that "[A.S.] has engaged over a period exceeding a year in a pattern of conduct knowingly causing [B.C.] to believe that he would cause her or family members physical harm by his threatening text messages, statements at visitation center and phone calls." The magistrate further found that B.C. and her witnesses presented the most credible testimony and gave "much weight * * * to the testimony of Chief Patterson." The DVCPO lists the protected parties as B.C., her husband, the couple's daughter, and A.S.'s two daughters. This Court notes that the birthdate of one of A.S.'s daughters is listed incorrectly on

the DVCPO. In addition, the wrong last name for A.S.'s daughters is listed on the portion of the order that made the temporary allocation of parental rights and visitation.

{¶17} According to B.C., the impetus for the filing of her petition for a DVCPO was her receipt of the reports from the Center about the alleged threats A.S. made in the presence of the staff and his children. She testified regarding these two reports at the ex parte hearing. The reports, however, were neither submitted into evidence at the full hearing nor did any Center staff or the children themselves testify as witnesses in support of the petition. There is no evidence that either B.C. or her husband were present when A.S. allegedly made the statements at the Center. Instead, their knowledge of the statements was garnered solely from reading the Center's reports prior to the October 24, 2012, hearing in the custody and visitation case. Accordingly, neither B.C. nor her husband has personal knowledge of the statements A.S. allegedly made at the Center.

{¶18} In addition, the testimony from B.C., her husband and Chief Patterson lacked specificity as to the nature and timing of the alleged past threats of violence. B.C. testified to past threats of physical violence, but could not testify as to what A.S. actually said or when. B.C.'s husband testified to a 2011 telephone call during which A.S. allegedly threatened to kill him, but nothing more recent other than what A.S. allegedly told Center staff about beating him up. B.C. failed to present copies of any of the alleged threatening text messages.

{¶19} The magistrate's decision states that "Petitioner and her witnesses presented the most credible testimony with much weight given to the testimony of Chief Patterson." However, the only specific incident Chief Patterson testified to is a "drive-by type thing where [A.S.] was seen on Christmas Day * * * dropping off some Christmas gifts in [B.C.'s] yard." According to Chief Patterson, B.C. contacted the police department numerous times on account of text

messages and telephone calls from A.S. that were of a "threatening nature." When the magistrate asked him what made the texts and telephone calls threatening, he replied that "there's been like swear words and things threatening her, threatening to lose the children, threatening to come down and take the children * * *." Chief Patterson also testified that A.S. had made threats of physical violence toward B.C.'s husband to the effect that he "would come down and take care of him." He did not testify to the time frame of any of the alleged text messages or telephone calls. B.C. did not introduce any police reports into evidence at the full hearing.[1]

{¶20} The crux of B.C.'s argument in favor of her petition for a DVCPO was that the alleged threatening statements made by A.S. at the Center constituted the "last straw" after years of animosity between the parents over the custody and visitation of their daughters. "Under Ohio law, in order for threats of violence to constitute domestic violence, 'the fear resulting from th[e] threats [must be] reasonable.'" *Wohleber v. Wohleber*, 9th Dist. Lorain No. 10CA009924, 2011-Ohio-6696, ¶ 13, quoting *Rhodes v. Gunter*, 9th Dist. Lorain Nos. 02CA008156, 02CA008157, 2003-Ohio-2342, ¶ 4. "Reasonableness is determined by referencing the petitioner's history with the respondent." *Id.*, quoting *Rhodes* at ¶ 4. "This Court has recognized that both the totality of the circumstances, as well as the victim's state of mind, are relevant to the determination that the threat of harm was imminent." *Chafin v. Chafin*, 9th Dist. Lorain No. 09CA009721, 2010-Ohio-3939, ¶ 22.

{¶21} However, "the reasonableness of [a petitioner's] fear of imminent serious physical harm may not be determined by incidents of prior domestic violence absent an initial, explicit

---

[1] At the ex parte hearing on the petition for a DVCPO, B.C. introduced a copy of the police report she made on October 26, 2012, concerning the alleged statements A.S. made at the Center.

indication that she was in fear of imminent serious physical harm on the date contained in the petition." *Id*. at ¶ 22, quoting *Fleckner v. Fleckner*, 177 Ohio App.3d 706, 2008-Ohio-4000, ¶ 27 (10th Dist.). "Imminent" has been defined as "ready to take place," "near at hand," "impending," "hanging threateningly over one's head," or "menacingly near." *State v. McKinney*, 9th Dist. Summit No. 24430, 2009-Ohio-2225, ¶ 11, quoting *State v. Tackett*, 4th Dist. Jackson No. 04CA12, 2005-Ohio-1437, ¶ 14. "[T]he critical inquiry is 'whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent), serious physical harm[.]'" *Id*., quoting *Tackett* at ¶ 14.

{¶22} None of the witnesses who testified in support of the petition could provide any detail or a time frame for the alleged threats which would allow the court to find that the statements were capable of producing a reasonable fear of imminent serious physical harm. None of the witnesses could state with any particularity and on personal knowledge any recent incidents wherein A.S. threatened imminent physical harm to B.C., her husband, or her family.

{¶23} B.C. and Chief Patterson both testified that A.S. made many threats. B.C., however, could not identify on cross-examination the last time A.S. threatened her with physical harm. Chief Patterson acknowledged that "it's all very general." B.C. admitted that A.S. had never threatened their daughters with physical violence. In addition there was no evidence that A.S. threatened physical violence against the daughter B.C. had with her husband. The testimony concerning the more recent incident involving the dropping off of presents on Christmas and "mumbled" words after the October 24, 2012, court hearing fail to suggest any alleged threat of physical harm. Therefore, even if B.C.'s fear is "reasonable" and, in fact, threats of imminent physical harm were made, the law requires the proffer of evidence sufficient upon which to base that fear at the time the petition was filed. *See Chafin*, 2010-Ohio-3939, at ¶

22, quoting *Fleckner* at ¶ 27. Testimony that recent statements made by A.S. to third parties or within earshot of third parties were the "last straw" cannot, without further evidence, support a finding that B.C. and her family were in danger of an imminent threat of serious physical harm.

{¶24} The most specific instance that B.C. and her husband testified to was the 2011 telephone call wherein A.S. allegedly threatened to kill B.C.'s husband. However, before a trial court may grant a DVCPO under Revised Code Section 3113.31, it must find that the respondent committed an act of domestic violence against a "family or household member." R.C. 3113.31(C)(1). A "[f]amily or household member" is defined as:

(a) Any of the following who is residing with or has resided with the respondent: (i) A spouse, a person living as a spouse, or a former spouse of the respondent; (ii) A parent, a foster parent, or a child of the respondent, or another person related by consanguinity or affinity to the respondent; (iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the respondent, or another person related by consanguinity or affinity to a spouse, or former spouse of the respondent.

(b) The natural parent of any child of whom the respondent is the other natural parent * * *.

R.C. 3113.31(A)(3). B.C.'s husband, therefore, was not a "[f]amily or household member" of A.S. as defined by Section 3113.31(A)(3). Since the only specific threat was made against B.C.'s husband, who does not fit the definition of a "family or household member," such an allegation could not form the sole basis of a DVCPO petition. Accordingly, a petition premised upon the alleged threat to B.C.'s husband would be more appropriate in the court of common pleas as a request for a civil stalking protection order issued under Section 2903.214 than the domestic relations court as a request for a DVCPO under Section 3113.31.

{¶25} This Court has carefully reviewed the transcript and the evidence from the full hearing. Viewing the evidence in a light most favorable to the petitioner, this Court concludes that there was insufficient evidence from which the trial court could have found that there was a

recent and imminent threat of domestic violence made upon which B.C. could reasonably premise her fear of imminent harm to herself, her husband and her children. *Schultz*, 2010-Ohio-3665, at ¶ 5, quoting *Felton*, 79 Ohio St. 3d 34 at paragraph two of the syllabus. Specifically, there was no evidence that the alleged threats recently occurred so as to reasonably be considered an imminent threat of harm. *Chafin*, 2010-Ohio-3939, at ¶ 22, quoting *Fleckner*, 2008-Ohio-4000, at ¶ 27.

{¶26} Given the evidence presented in this case, B.C. did not satisfy her burden to show that A.S. demonstrated a threat of force in order to produce a fear of imminent serious physical harm or evidence of the commission of a violation of section 2903.211 or 2911.211 of the Revised Code so as to constitute domestic violence under Revised Code Section 3113.31(A)(1)(b). Accordingly, A.S.'s third assignment of error is sustained.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY PROCEEDING WITH A FULL HEARING ON THE PETITION OF (SIC) A DOMESTIC VIOLENCE CIVIL PROTECTION ORDER WITHOUT INQUIRING OF APPELLANT-RESPONDENT, [A.S.] IF HE HAD AN ATTORNEY OR UNDERSTOOD HIS RIGHTS TO REPRESENTATION, DESPITE THE FACT THAT APPELLANT-RESPONDENT AND HIS COUNSEL WERE LATE TO SCHEDULED HEARING.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY ISSUING A DOMESTIC VIOLENCE CIVIL PROTECTION ORDER WHICH INCLUDED THE RESPONDENT'S MINOR CHILDREN AS PROTECTED PARTIES WITHOUT ANY PROVISION FOR VISITATION OR OTHER LIMITATION IN LIGHT OF A CORRESPONDING AND ONGOING PATERNITY ACTION WHICH HAD ALREADY ISSUED ORDERS REGARDING VISITATION.

{¶27} Due to this Court's resolution of A.S.'s third assignment of error, his first and second assignments of error are moot. We, therefore, decline to address them. App.R. 12(A)(1)(c).

12

III.

{¶28} A.S.'s third assignment of error is sustained, and his first and second assignments of error are moot. The judgment of the Medina County Court of Common Pleas, Domestic Relations Division is reversed and the matter is remanded with instructions for the trial court to vacate the domestic violence civil protection order.

Judgment reversed,
cause remanded.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

JENNIFER HENSAL
FOR THE COURT

CARR, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

DANIEL F. MAYNARD, Attorney at Law, for Appellant.

B. C., pro se, Appellee.