[Cite as *M.H. v. J.H.*, 2015-Ohio-5178.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

M.H.

     Appellee

     v.

J.H.

     Appellant

C.A. No.     15CA0031-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    14DV0107

DECISION AND JOURNAL ENTRY

Dated: December 14, 2015

SCHAFER, Judge.

{¶1} Respondent-Appellant, J.H., appeals the judgment of the Medina County Court of Common Pleas, Domestic Relations Division, granting a domestic violence civil protection order against him. For the reasons that follow, we reverse the trial court's judgment.

I.

{¶2} On June 23, 2014, Petitioner-Appellee, M.H., filed a petition for the issuance of a domestic violence civil protection order. M.H. is J.H.'s estranged wife and she requested protection both for herself and her daughter, N.S. N.S. is not J.H.'s biological daughter, but he is apparently listed as N.S.'s legal father on her birth certificate since she was born during the course of J.H.'s and M.H.'s marriage.

{¶3} The trial court issued an ex parte domestic violence civil protection order the same day as the petition's filing. After an evidentiary hearing, a magistrate issued a decision granting a domestic violence civil protection order against J.H. in favor of M.H. and N.S. that

was subsequently adopted by the trial court. J.H. filed timely objections, but after receiving oral argument at an objections hearing, the trial court overruled the objections and ordered that the domestic violence civil protection order remain in force. J.H. filed this timely appeal, presenting a single assignment of error for our review.

## II.

### Assignment of Error

**The evidence presented at the objection hearing was insufficient to support the Magistrates [sic] Decision to grant the Domestic Violence Civil Protection Order and therefore was against the manifest weight of the evidence resulting in the trial court erring in its order of March 5, 2015 when it affirmed the Magistrate's Decision.**

{¶4}   In his sole assignment of error, J.H. argues that M.H. failed to offer sufficient evidence to support the issuance of a domestic violence civil protection order against him. He also challenges the trial court's judgment on manifest weight grounds. Since we agree with J.H.'s sufficiency argument, we need not reach his manifest weight challenge.

### A.  Standard of Review

{¶5}   "'In order to grant a [domestic violence civil protection order], the court must conclude that the petitioner has demonstrated by a preponderance of the evidence that the petitioner * * * [is] in danger of domestic violence.'" *M.K. v. J.K.*, 9th Dist. Medina No. 13CA0085-M, 2015-Ohio-434, ¶ 7, quoting *B.C. v. A.S.*, 9th Dist. Medina No. 13CA0020-M, 2014-Ohio-1326, ¶ 7. When assessing the sufficiency of the evidence for a trial court's decision to grant a civil protection order, "we must determine whether, viewing the evidence in the light most favorable to [the petitioner], a reasonable trier of fact could find that the petitioner demonstrated by a preponderance of the evidence that a civil protection order should issue." *R.C. v. J.G.*, 9th Dist. Medina No. 12CA0081-M, 2013-Ohio-4265, ¶ 7, citing *Eastley v.*

*Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 11, and *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. A sufficiency challenge tests the adequacy of the evidence. *Eastley* at ¶ 11. In applying the sufficiency standard, "'we neither resolve evidence conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact.'" *State v. Tucker*, 9th Dist. Medina No. 14CA0047-M, 2015-Ohio-3810, ¶ 7, quoting *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120571, 2013-Ohio-4775, ¶ 33.

### B. Fear of Imminent Serious Physical Harm

**{¶6}** Here, the trial court decided to issue the domestic violence civil protection order based on its determination that M.H. and N.S. "are in danger of or have been victims of domestic violence[.]" In supporting this determination, the trial court specifically found that "there is competent, credible evidence that, based upon the totality of the circumstances and the prior conduct of [J.H., M.H.] reasonably feared imminent serious physical harm when he appeared, unannounced and uninvited, at her apartment and attempted to call out her four year old daughter to him." This finding implicates R.C. 3113.31(A)(1)(b), which defines "domestic violence" for the purposes of protection order proceedings as "[p]lacing another person by the threat of force in fear of imminent serious physical harm."

**{¶7}** When reviewing such a finding, "the critical inquiry is 'whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent) serious physical harm[.]'" *State v. McKinney*, 9th Dist. Summit No. 24430, 2009-Ohio-2225, ¶ 11, quoting *State v. Tackett*, 4th Dist. Jackson No. 04CA12, 2005-Ohio-1437, ¶ 14. In carrying out this inquiry, we refer to the petitioner's history with the respondent. *E.g.*, *Wohleber v. Wohleber*, 9th Dist. Lorain No. 10CA009924, 2011-Ohio-6696, ¶ 13. But, previous incidents of domestic violence do not support a finding that the petitioner's fear of imminent serious physical

harm was reasonable "'absent an initial, explicit indication that she was in fear of imminent serious physical harm on the date contained in the petition.'" *Chafin v. Chafin*, 9th Dist. Lorain No. 09CA009721, 2010-Ohio-3939, ¶ 22, quoting *Fleckner v. Fleckner*, 177 Ohio App.3d 706, 2008-Ohio-4000, ¶ 27 (10th Dist.); *see also Wetterman v. B.C.*, 9th Dist. Medina No. 12CA0021-M, 2013-Ohio-57, ¶ 11 ("The purpose of the civil protection order is not to address past abuse."). Additionally, "both the totality of the circumstances, as well as the victim's state of mind, are relevant to the determination that the threat of harm was imminent." *Chafin* at ¶ 22.

### C. There Is Insufficient Evidence in this Matter

{¶8} At the evidentiary hearing, M.H. supported her petition with her own testimony.[1] As to the June 22, 2014 incident that gave rise to the filing of the petition, M.H. testified as follows:

> [J.H.] had showed up at my residence with no way of finding out where I lived. I had not changed my address or any information of where I lived for that reason. Unannounced, he had came [sic] to my house. He had went to the laundry room where my friend and my daughter were doing laundry. He had knelt down to try and get my daughter to come to him, and my daughter had said, "No, you hurt my mommy," and she hid behind the washer.
> At that time my friend, he had also told my friend not to say an f-ing word. My friend had grabbed my daughter and tried to walk past [J.H.]. He was standing in the doorway, and they had got past him and came down the stairs, and he had brought my daughter inside. He had told – my daughter had asked him if he wanted to talk to her mommy, and he said, yes, and so then I waited a few minutes until I composed myself to go out there.
> When I went out there, he was gone.

M.H. explained that she is unable to feel safe knowing that J.H. can find her residence. She further explained the basis for her fear as follows:

> The fact again that he just knows where I live, that he would even come to Ohio just to see me, that he would even come into Ohio just to find out anything. If he

---

[1] The hearing transcript indicates that M.H. also offered pictures and letters into evidence that were marked as exhibits. However, the record does not contain any exhibits, nor does the transcript reflect that the trial court admitted them into evidence.

needed to find out where I lived or anything, he could have sat to the side and just watched to see if I was walking in and out of the residence, not walk up to my residence and speak with my daughter.

M.H. also said that she wanted the order to cover N.S. since "she was the only one [J.H.] contacted that day when he came[.]"

{¶9}   Moreover, M.H. testified that she had left J.H. on two previous occasions due to "a controlling and very angry marriage," which featured previous altercations between J.H. and her.  She indicated that in 2013, J.H. "grabbed me up [and] threw me up against the dresser," causing her to sustain injuries that are undescribed in the record.  She described another event as follows:

> In 2007, I had left our marriage and at that time we were living with [J.H.'s] mother.  He had his concealed weapon in his van at that time.  His mother said that he was not allowed to bring his concealed weapon with him in the house at all in any circumstances.  He had went out.  When he found that I was leaving, he had went out and brought his weapon into the house and opened the case.  I was on the phone with my niece at that time who called the police because she was worried because he had pulled his weapon.
>     The police came.  They cuffed him and put him in the back of the car while I continued to get my belongings[.]

In regard to a 2003 incident, M.H. testified that J.H. "put his hands on me * * * and he said that he did it to stop me from yelling in the middle of the street."

{¶10} J.H. testified that approximately three months after M.H. left Michigan, he received an alert from a credit tracking company that the address for one of his credit accounts was changed to the address of M.H.'s new apartment complex.  As a result, J.H. went to the complex to find out if M.H. was living there and to see N.S., who he described as "little girl." J.H. came to Ohio with his nephew, who testified at the hearing that J.H. never made any threats during the interaction with N.S. and M.H.'s friend in the laundry room.

{¶11} J.H. also testified to the previous incidents discussed during M.H.'s testimony. He denied ever assaulting M.H. and specifically testified that M.H. instigated the 2013 incident when she "punch[ed] him back and forth." J.H. also denied brandishing his firearm against M.H. during the 2007 incident. He indicated that police responded to his mother's residence after receiving a phone call and asked that he turn his firearm over for a weeklong "cooling off" period during which the firearm was stored in a police locker. J.H. said he was never charged or arrested as a result of the incident and that the police returned his firearm after the cooling off period expired. The testimony of J.H.'s mother essentially confirmed J.H.'s testimony. She was present during the 2007 incident and said that J.H. never brandished a firearm during it. J.H.'s mother further testified that during her 16 years of living with J.H. and M.H., she never saw an instance of domestic violence.

{¶12} Even considering the evidence in the light most favorable to M.H., we conclude that there was insufficient evidence from which the trial court could have found that there was a recent threat of domestic violence upon which M.H. could reasonably premise fear of imminent harm to herself or N.S. The June 22, 2014 incident did not involve J.H. making any threats of violence. Indeed, the incident did not involve *any contact* between J.H. and M.H. Rather, the record merely reflects that J.H. attempted to make contact with N.S. in the apartment complex's laundry room, told M.H.'s friend to not say anything, and asked N.S. to tell M.H. that he wanted to speak with her. *See B.C.*, 2014-Ohio-1326, at ¶ 22 (determining that there was insufficient evidence to support issuance of domestic violence civil protection order since "[n]one of the witnesses could state with any particularity and on personal knowledge any recent incident wherein [the respondent] threatened imminent physical harm to [the petitioner], her husband, or her family").

**{¶13}** Additionally, M.H.'s asserted basis for the petition highlights the lack of a reasonable fear of imminent physical harm in this matter. M.H. testified that she was fearful because J.H. knew her new address and that she wanted the protection order to cover N.S. because he attempted to make contact with her. When asked what she thought would happen if there was no civil protection order, M.H. responded as follows:

> [T]here's times that when we were split up before he was able to tell me four, different locations that I was at without even me having any clue of how he was able to find me then either. He showed up at a friend's house. Then he showed up at a friend's house, had me sign paperwork, that he had no clue where I was even at. Again, he was able to find me. I just don't – I don't want him to be able to find me or come to me at any point and just not know what's going to happen or what's going to go on.

There is no indication from this testimony that M.H. even believed that J.H. would act violently towards her or N.S. if there was no protection order in place. *See Fleckner*, 177 Ohio App.3d 706, 2008-Ohio-4000, at ¶ 30 (reversing trial court's issuance of domestic violence civil protection order since "[t]he record fails to establish that appellant made any threat of force, that appellee feared serious physical harm as a result of any of appellant's actions or statements, or that she feared that appellant would undertake to harm her imminently"). Rather, it appears that M.H. simply wants J.H. to not know where she is living and to not contact her. But, "[t]he purpose of a domestic violence civil protection order is 'to protect the family or household member from domestic violence,'" *Gaydash v. Gaydash*, 168 Ohio App.3d 418, 2006-Ohio-4080, ¶ 19 (9th Dist.), and "it is inappropriate to use a protection order merely to create a buffer-zone around [the petitioner and her] children," *Williamson v. Williamson*, 180 Ohio App.3d 260, 2008-Ohio-6718, ¶ 60 (2d Dist.). Consequently, we cannot countenance granting a domestic violence civil protection order on this asserted basis.

**{¶14}** In sum, there is insufficient evidence in the record to support the trial court's finding that M.H. reasonably feared imminent serious physical harm after the June 22, 2014 incident. We consequently determine that the trial court erred in issuing the domestic violence civil protection order. This determination renders J.H.'s manifest weight argument moot and we decline to address it. *See* App.R. 12(A)(1)(c).

**{¶15}** Accordingly, we sustain J.H.'s assignment of error as it relates to his sufficiency argument.

## III.

**{¶16}** Having sustained J.H.'s assignment of error, we reverse the judgment of the Medina County Court of Common Pleas, Domestic Relations Division, and remand this matter with instructions that the trial court vacate the domestic violence civil protection order.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JULIE A. SCHAFER
FOR THE COURT

WHITMORE, J.
CONCURS.

CARR, P. J.
CONCURRING IN JUDGMENT ONLY.

{¶17} In determining that a domestic violence civil protection order should issue, the trial court relied on our prior precedent in *Chafin v. Chafin*, 9th Dist. Lorain No. 09CA009721, 2010-Ohio-3939. Citing to *Chafin*, the trial court specifically found the totality of the circumstances here, coupled with prior instances of violence, warranted the issuance of a civil protection order. However, the facts in *Chafin* are completely distinguishable from this case. In *Chafin*, the respondent while intoxicated actually broke into his estranged wife's home in the middle of the night and threatened her. As the evidence in this case presented a distinguishable set of facts, I agree that reversal of the trial court's issuance of a domestic violence civil protection order is warranted.

APPEARANCES:

DAVID V. GEDROCK, Attorney at Law, for Appellant.

M.H., pro se, Appellee.