[Cite as *M.K. v. J.K.*, 2015-Ohio-434.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS | |
| | )ss: | NINTH JUDICIAL DISTRICT | |
| COUNTY OF MEDINA | ) | | |

J. K.

     Appellant

     v.

M. K.

     Appellee

C.A. No.     13CA0085-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.     13 DV 0192

DECISION AND JOURNAL ENTRY

Dated: February 6, 2015

CARR, Presiding Judge.

{¶1}    Appellant, J.K. ("Husband"), appeals from the domestic violence civil protection order issued by the Medina County Court of Common Pleas, Domestic Relations Division. This Court affirms.

I.

{¶2}    On September 3, 2013, Appellee, M.K. ("Wife"), filed a petition for a domestic violence civil protection order against Husband on behalf of herself, her daughter, and her son. The two were in the process of getting divorced and met on that date so that Wife could pick up their son from Husband. According to Wife, Husband became angry with her during the exchange and ultimately told her: "you are going to die b****!" That same day, a magistrate entered an ex parte protection order, protecting Wife and her daughter.

{¶3}    On September 13, 2013, a magistrate held a full hearing on Wife's petition. Wife appeared at the hearing pro se, and Husband appeared with counsel. At the conclusion of the

hearing, the magistrate issued a domestic violence civil protection order against Husband, protecting Wife. The trial court approved and adopted the protection order the same day.

{¶4} Husband now appeals from the protection order and raises three assignments of error for our review. For ease of analysis, we consolidate the assignments of error.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FINDING BY A PREPONDERANCE OF THE EVIDENCE THAT [HUSBAND] ENGAGED IN DOMESTIC VIOLENCE AS DEFINED BY O.R.C. SECTION 3113.31.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN APPLYING THE WRONG BURDEN OF PROOF IN DETERMINING WHETHER [HUSBAND] ENGAGED IN DOMESTIC VIOLENCE AS DEFINED IN O.R.C. SECTION 3113.31.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT'S DECISION TO GRANT [WIFE'S] PETITION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶5} In his assignments of error, Husband argues that the trial court erred by granting Wife's petition for a domestic violence civil protection order. He argues that the court applied the wrong burden of proof, erred by finding that Wife was in imminent danger of domestic violence, and lost its way in choosing to believe Wife's version of the events. For the reasons that follow, we do not agree that the court erred by issuing a protection order.

{¶6} Civ.R. 65.1 governs civil protection orders. "According to Civ.R. 65.1(F)(3), civil protection petitions may be referred to a magistrate for determination, but civil protection orders are not 'magistrate's order[s]' as contemplated by Civ.R. 53(D) and are not subject to the requirements of Civ.R. 53 related to magistrate's orders." *R.C. v. J.G.*, 9th Dist. Medina No.

12CA0081-M, 2013-Ohio-4265, ¶ 5. "The trial court may adopt the magistrate's decision after determining that there is no error of law or other defect evident on the face of the order." *B.C. v. A.S.*, 9th Dist. Medina No. 13CA0020-M, 2014-Ohio-1326, ¶ 5, citing Civ.R. 65. 1(F)(3)(c)(ii). A party then may choose to object to the "court's adoption, modification, or rejection of a magistrate's denial or granting of a protection order after a full hearing, or any terms of such an order, within fourteen days of the court's filing of the order." Civ.R. 65.1(F)(3)(d)(i). The filing of objections is not mandatory. "A civil protection order is final and appealable and may be reviewed on appeal with or without objections being filed in the trial court." *R.C.* at ¶ 5, citing Civ.R. 65.1(1)(F)(3)(d) and (G).

{¶7} "In order to grant a [domestic violence civil protection order], the court must conclude that the petitioner has demonstrated by a preponderance of the evidence that the petitioner * * * [is] in danger of domestic violence." *B.C.* at ¶ 7. The trial court in this case determined that Wife was in danger of domestic violence as defined in R.C. 3113.31(A)(1)(b). That subsection of the statute defines domestic violence as "the occurrence of one or more of the following acts against a family or household member: * * * [p]lacing another person by the threat of force in fear of imminent serious physical harm * * *." R.C. 3113.31(A)(1)(b).

**Burden of Proof**

{¶8} In his second assignment of error, Husband argues that the trial court applied the wrong burden of proof when it considered Wife's petition. He relies upon the transcript from the full hearing on Wife's petition. When the magistrate discussed the possibility of a consent decree with Husband, the foregoing exchange took place:

> THE COURT: Okay, sir, you understand that in reaching a consent entry, you're not admitting to any domestic violence.
>
> [HUSBAND]: Correct.

THE COURT: There's nothing -- if an employer were to pull a criminal record, there is nothing that this case would cause to show up. Do you understand that?

[HUSBAND]: Yes.

THE COURT: Okay, so I'm a little confused then as to what the perceived issue is.

[HUSBAND]: I still believe I have done nothing wrong. I don't see why any of this is.

THE COURT: But none of this is a finding that you've done anything wrong.

[HUSBAND]: Yes.

THE COURT: If you go through a hearing, *she only has to show by a preponderance of the evidence that she felt threatened*, and then I could make a finding that you did something wrong.

[HUSBAND]: Mm-hmm.

THE COURT: Okay, so you're taking a huge risk here in not reaching the consent entry, and you still wish to go forward?

[HUSBAND]: Yes, ma'am.

(Emphasis added.) Husband points to the foregoing, italicized language to argue that the court granted Wife's protection order without finding that she proved, by a preponderance of the evidence, that she was in danger of domestic violence.

{¶9} "It is well settled that a court speaks only through its journal entries, and not through mere oral pronouncements." (Internal quotations and citations omitted.) *Finley & Sons Builders, Inc. v. Cross*, 9th Dist. Summit No. 23738, 2007-Ohio-7037, ¶ 7. Even if this Court were to construe the magistrate's oral statements as misstatements of the law, the court's journal entry does not support Husband's argument that it misapplied the burden of proof in this matter. In her attached factual findings, the magistrate found that Husband threatened Wife, that Wife reasonably feared for her physical safety, and that Husband "committed an act of domestic violence under Ohio Revised Code 3113.31(A)(1)(b) by placing [Wife] in fear of imminent

serious physical harm." Moreover, in addition to the magistrate's attached factual findings, the court's entry provides as follows:

> The Court [] finds by a preponderance of the evidence: 1) that [Wife] * * * [is] in danger of or [has] been a victim of domestic violence * * * as defined in R.C. 3113.31(A) committed by [Husband]; and 2) the [court's] orders are equitable, fair, and necessary to protect [Wife] from domestic violence.

Because the court's written journal entry belies Husband's assertion that it misapplied the burden of proof in this matter, we reject Husband's argument to the contrary. As such, his second assignment of error is overruled.

**Sufficiency**

{¶10} In his first assignment of error, Husband argues that the protection order is not based on sufficient evidence. A challenge to the sufficiency of a protection order requires this Court to determine "whether, viewing the evidence in the light most favorable to [the petitioner], a reasonable trier of fact could find that the petitioner demonstrated by a preponderance of the evidence that a civil protection order should issue." *R.C.*, 2013-Ohio-4265, at ¶ 7, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, and *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 11. "[S]ufficiency is a test of adequacy." *Eastley* at ¶ 11, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶11} As noted above, R.C. 3113.31(A)(1)(b) defines domestic violence as "the occurrence of one or more of the following acts against a family or household member: * * * [p]lacing another person by the threat of force in fear of imminent serious physical harm * * *." R.C. 3113.31(A)(1)(b). "Under Ohio law, in order for threats of violence to constitute domestic violence, 'the fear resulting from th[e] threats [must be] reasonable.'" *Wohleber v. Wohleber*, 9th Dist. Lorain No. 10CA009924, 2011-Ohio-6696, ¶ 13, quoting *Rhodes v. Gunter*, 9th Dist. Lorain Nos. 02CA008156 & 02CA008157, 2003-Ohio-2342, ¶ 4. "'Reasonableness is

determined by referencing the petitioner's history with the respondent.'" *Wohleber* at ¶ 13, quoting *Rhodes* at ¶ 4. Yet, past incidents of domestic violence, standing alone, cannot form the basis of a petitioner's fear of imminent serious physical harm. *See Chafin v. Chafin*, 9th Dist. Lorain No. 09CA009721, 2010-Ohio-3939, ¶ 22. "'Imminent' has been defined as 'ready to take place,' 'near at hand,' 'impending,' 'hanging threateningly over one's head,' or 'menacingly near.'" *B.C.*, 2014-Ohio-1326, at ¶ 21. "This Court has recognized that both the totality of the circumstances, as well as the victim's state of mind, are relevant to the determination that the threat of harm was imminent." *Chafin* at ¶ 22.

{¶12} At the September 13, 2013 hearing, Wife testified that she was seeking a protection order due to an incident that had occurred on September 3rd. On that day, the parties arranged to meet at a gas station parking lot so that Wife could pick up their son from Husband. According to Wife, the two got into a dispute because Husband wanted money from Wife for more diapers. When Husband asked where the money was and Wife refused to provide it, Husband threatened to have her arrested. Wife then reiterated that she would not be giving Husband any money for diapers. According to Wife, at that point, Husband "got * * * right in [her] face [] and he said, 'You're going to die, b****.'" She described Husband's face as "evil-looking" when he made the threat and testified that the threat "scared the crap out of [her]."

{¶13} In addition to the September 3rd incident, Wife testified that Husband had been harassing her for months and had a history of physical violence. She introduced a copy of a restraining order that the domestic relations court had issued back in March, prohibiting Husband from contacting her during the pendency of their divorce action unless there was a child-related emergency. In spite of the restraining order, Wife testified that Husband constantly called her, left her voicemails, and sent her text messages that were not related to any emergencies. She

played several of the voicemails for the court and read several of the text messages into the record. The voicemails, in particular, were rife with profanity, hostile in nature, and were left within a few weeks of the September 3rd incident. For instance, on August 14th, Husband left the following voicemail:

> Yes, I will be in my shop at 5:00 seeing as I have to go deal with some other stuff because whatever, f***ing bull*** you pull with child support, they put a hold on my f***ing bank account so now I have to go pay my other debts in cash which I don't f***ing have because of some bull**** that you f***ing pulled. I don't know what the f*** you're doing, but you better f***ing stop it.

Wife confirmed that Husband left the foregoing voicemail and many other voicemails and text messages for her during the time period that the restraining order was in place.

{¶14} Wife testified that Husband was prosecuted for criminal mischief in December 2012, when he broke out her car window. Additionally, she described how, in January 2013, Husband put "his hands around [her] throat and was threatening to choke the life out of [her]." Wife asked the court to issue a protection order because she could not "live with the harassment, and [was] scared to death of [Husband]." She stated that Husband harassed her every day and that she was scared to walk anywhere by herself because she was afraid of what might happen. She testified that she needed the court's help because Husband "said [she] was going to die" and she "[did not] want to die."

{¶15} Husband first argues that the court should have excluded Wife's testimony regarding past acts of domestic violence on the basis of res judicata. He notes that Wife filed a petition for a protection order against him in January 2013, claiming that he had put his hands around her throat.[1] The court held a full hearing on Wife's January 2013 petition and ultimately

---

[1] Husband introduced a copy of Wife's January 2013 petition at the full hearing, as well as a copy of the prior court's decision, denying the petition.

denied it, finding that Wife had failed to prove she was in danger of domestic violence. Because the prior court would not issue a protection order based on Wife's allegations that Husband had choked her, Husband argues that the doctrine of res judicata prohibited Wife from relying on those same allegations in seeking another protection order.

{¶16} The record reflects that Husband failed to preserve his res judicata argument in the court below. Husband did not object when Wife testified about the choking incident that allegedly occurred in January 2013. Indeed, he extensively cross-examined Wife about the fact that the prior court did not issue a protection order on the basis of her accusations. He also used the January 2013 situation in his final argument before the magistrate, arguing that it was evidence of Wife's lack of credibility. Husband never argued that the court should exclude Wife's prior allegations of domestic violence on the basis of res judicata. Consequently, we will not consider his argument for the first time on appeal. *See JPMorgan Chase Bank, Natl. Assn. v. Burden*, 9th Dist. Summit No. 27104, 2014-Ohio-2746, ¶ 12 ("Arguments that were not raised in the trial court cannot be raised for the first time on appeal.").

{¶17} Viewing the evidence in a light most favorable to Wife, we must conclude that she presented evidence from which a reasonable trier of fact could have concluded that she demonstrated, by a preponderance of the evidence, that a protection order should issue. *See R.C.*, 2013-Ohio-4265, at ¶ 7, citing *Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus, and *Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, at ¶ 11. Wife testified that Husband constantly harassed her and, on September 3rd, threatened her life by coming close to her face, looking into her eyes, and stating: "You're going to die, b****." There was evidence that Husband repeatedly contacted Wife, despite being under a court order not to do so, and that his messages were hostile in nature. Additionally, Wife testified about the parties' tumultuous

history, which the court could consider in determining the reasonableness of Wife's fear of Husband's threat. *See Wohleber*, 2011-Ohio-6696, at ¶ 13, quoting *Rhodes*, 2003-Ohio-2342, at ¶ 4. Wife presented evidence from which the court could conclude that she, by virtue of Husband's threat of force, was reasonably placed "in fear of imminent serious physical harm * * *." R.C. 3113.31(A)(1)(b). Consequently, Husband's sufficiency argument lacks merit. His first assignment of error is overruled.

**Manifest Weight**

{¶18} In his third assignment of error, Husband argues that the court's decision to issue a domestic violence civil protection order is against the weight of the evidence. He argues that the court lost its way when it chose to believe Wife because the evidence tended to show that Wife fabricated the threat he allegedly made on September 3, 2013.

{¶19} "[T]he civil manifest weight of the evidence standard of review * * * mirrors the criminal standard." *Pelmar USA, L.L.C. v. Mach. Exchange Corp.*, 9th Dist. Summit No. 25947, 2012-Ohio-3787, ¶ 10. Therefore, we sit as a "thirteenth juror" and review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the trier of fact "'clearly lost its way and created a manifest miscarriage of justice* * *.'" *Eastley* at ¶ 20, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). "In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings." *Lundin v. Niepsuj*, 9th Dist. Summit No. 26015, 2014-Ohio-1212, ¶ 12. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." (Internal quotations and citations omitted.) *Donovan v. Donovan*, 9th Dist. Lorain No. 11CA010072, 2012-Ohio-3521, ¶ 18.

**{¶20}** Husband testified that he met Wife on September 3rd to drop off his son, but never threatened her. He admitted that he asked Wife for money for diapers, but stated that he did so because it was his understanding that Wife was responsible for all of the diapers due to her receipt of child support. Husband testified that, when he asked Wife for the money, she stated that she had spoken with the police department about the issue and did not "have to give [him] s***." He then began asking Wife about turning over certain pictures of their son, which the court had ordered her to do. Husband testified that, when Wife did not agree about turning over the pictures, he told her that they would be going back to court. According to Husband, Wife then said, "You're going to die, m***** f*****," turned around and ran back to her car, yelling: "Did you hear that? I'm filing a CPO." Husband testified that Wife had a male friend with her and that her friend was standing next to her car. He testified that, when Wife ran back to the car, her friend stepped from around the car and threatened to physically harm Husband. Husband then turned around and walked back to his nearby apartment. He testified that he immediately filed a police report about the incident, but that he did not know the status of the case.

**{¶21}** Husband testified that he never threatened Wife or used physical violence against her on any occasion. He admitted that he broke out Wife's car window in December 2012, but said that he did so because Wife had locked his keys in her car and refused to give them back. He also testified that he never placed his hands around Wife's neck in January 2013.

**{¶22}** During cross-examination, Wife admitted that she had a history of filing petitions for protection orders. She acknowledged that she had filed two petitions against her first husband and five prior petitions against Husband. Further, she acknowledged that she had dismissed six of the eight prior petitions before a full hearing could take place. Wife explained, however, that she did so based on the promises of each of her husbands that they would receive

treatment for their respective behaviors. She testified that the petition she filed on September 3rd was different than the others because Husband's threat actually made her fear for her life.

{¶23} Although Wife admitted that she brought a friend with her to meet husband on September 3rd, she did not call her friend to testify as a witness. Wife testified that her friend was standing approximately 100 feet away when Husband threatened her, so he did not hear what Husband said. Wife admitted that her testimony was the only evidence she had that Husband had threatened her. She also admitted that, even though she filed a police report about Husband's harassing phone calls, she did not file one about the September 3rd incident. Wife testified that she filed for a protection order instead, but indicated that it was a mistake not to have also filed a police report.

{¶24} Husband argues that the trial court lost its way when it chose to believe Wife's testimony. He argues that, if Wife was truly afraid of him, she would have asked her male friend to stand with her when she met Husband on September 3rd. He further argues that, given that Wife had gone to the police about other issues, it stands to reason that Wife would have filed a police report about the threat he allegedly made on September 3rd. Because Wife's actions were inconsistent with her claim that she was in danger of domestic violence, Husband argues, the court's decision to grant Wife's petition for a protection order is against the manifest weight of the evidence.

{¶25} The trial court was presented with conflicting testimony in this matter and its decision hinged primarily upon its determination of the parties' credibility. "As the trier of fact is in the best position to assess matters of credibility, this Court is loath to disturb those determinations on appeal." *Wiseman v. Wiseman*, 9th Dist. Medina No. 13CA0009-M, 2014-Ohio-2002, ¶ 28. This Court did not have the benefit of hearing the parties testify firsthand, but

the magistrate specifically found Wife's testimony credible. Having reviewed the entire record, "we cannot conclude that the trier of fact lost its way in choosing to believe Wife's version of the events and by concluding that Wife * * * [was] in danger of domestic violence." *Donovan*, 2012-Ohio-3521, at ¶ 18. As such, Husband's manifest weight argument lacks merit. His third assignment of error is overruled.

## III.

**{¶26}** Husband's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

WHITMORE, J.
MOORE, J.
CONCUR.

APPEARANCES:

LANENE M. MESLAT, Attorney at Law, for Appellant.

M.K. pro se, Appellee.