[Cite as *C.Q. v. P.S.*, 2016-Ohio-4988.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

C.Q.

     Appellee

     v.

P.S.

     Appellant

C.A. No.     15CA0065-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    15DV0136

DECISION AND JOURNAL ENTRY

Dated: July 18, 2016

---

MOORE, Judge.

{¶1} Respondent P.S. ("Husband") appeals from the judgment of the Medina County Court of Common Pleas granting a civil protection order ("CPO") in favor of the petitioner, C.Q. ("Wife"). We affirm.

I.

{¶2} In June of 2015, Wife filed a petition for a domestic violence civil protection order, pursuant to R.C. 3113.31, against Husband, while the parties were involved in a divorce proceeding. The trial court granted Wife an ex parte CPO, and the matter proceeded to a full hearing before a magistrate. Thereafter, the trial court granted the CPO for a period of five years.

{¶3} Husband timely appealed from the CPO, and he now presents two assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

WHETHER THE TRIAL COURT'S NONCOMPLIANCE WITH THE PROCEDURAL REQUIREMENTS CONCERNING THE MAGISTRATE'S DECISION UNDER [CIV.R.] 53(D)(3) INVALIDATES THE DOMESTIC VIOLENCE CIVIL PROTECTION ORDER.

{¶4} In his first assignment of error, Husband argues that the trial court erred by failing to adhere to the procedure outlined in Civ.R. 53(D)(3) when granting the CPO.

{¶5} Husband's argument is misplaced because he relies on case law pertaining to the relationship between Civ.R. 53 and CPOs that predates the adoption of Civ.R. 65.1. *See, e.g., Larson v. Larson*, 3d Dist. Seneca No. 13-11-25, 2011-Ohio-6013. Civ.R. 65.1, effective on July 1, 2012, governs this matter. Civ.R. 65.1(A) ("The provisions of this rule apply to special statutory proceedings under R.C. 3113.31 * * * providing for domestic violence * * * civil protection orders[. The provisions] shall be interpreted and applied in a manner consistent with the intent and purposes of those protection order statutes, and supersede and make inapplicable in such proceedings the provisions of any other rules of civil procedure to the extent that such application is inconsistent with the provisions of this rule."). Civ.R. 65.1(F)(3)(b) provides that "[a] magistrate's denial or granting of a protection order after full hearing under this division does not constitute a magistrate's order or a magistrate's decision under Civ.R. 53(D)(2) or (3) and is not subject to the requirements of those rules." *See also J.B. v. Harford*, 9th Dist. Summit No. 27231, 2015-Ohio-13, ¶ 3, quoting *R.C. v. J.G.*, 9th Dist. Medina No. 12CA0081-M, 2013-Ohio-4265, ¶ 5.

{¶6} Here, Husband's first assignment of error is based entirely on the procedural requirements of Civ.R. 53(D)(3). Because those procedural requirements are inapplicable to the present matter, Husband's first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

WHETHER SUFFICIENT, COMPETENT, AND CREDIBLE EVIDENCE WAS PRESENTED TO THE TRIAL COURT THEREBY SUPPORTING THE ISSUANCE OF A DOMESTIC VIOLENCE CIVIL PROTECTION ORDER.

**{¶7}** In his second assignment of error, Husband appears to assert that the CPO was issued without sufficient evidence, and that it was against the manifest weight of the evidence. However, the crux of Husband's argument in support of this assignment of error is that Wife's testimony was not credible, implicating a review under the standard applicable to the manifest weight of the evidence. We limit our review accordingly.

**{¶8}** In determining whether a trial court's ruling is against the weight of the evidence:

The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.

(Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

**{¶9}** "In order for a domestic violence CPO to issue, 'the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence.'" *R.C.*, 2013-Ohio-4265, at ¶ 8, quoting *Felton v. Felton*, 79 Ohio St.3d 34 (1997), paragraph two of the syllabus. "Domestic violence" includes the following acts taken against a family or household member:

(a) Attempting to cause or recklessly causing bodily injury;

(b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code;

* * *.

R.C. 3113.31(A)(1).

{¶10} Here, at the full hearing, Wife testified in support of her petition. Wife stated that she and Husband had been married for about two years, and the parties had a ten-month-old daughter together. Husband would travel to New York during the week and come home to the marital residence Thursday night through Sunday night. Wife and Husband, when he was home from New York, had continued to reside at the marital residence together, although they were involved in a divorce. Wife maintained that, on May 23, 2015, which was a Saturday during Memorial Day weekend, Wife was sitting with Husband on the couch, and he started making sexual advances toward her. She made it clear that she did not welcome any sexual advances and moved to the floor. He then laid down next to her. She turned toward him to emphasize that she was not going to engage in sexual activity with him, and he then grabbed her around her neck for approximately 20-25 seconds, tightly squeezing her throat between his fingers and thumb. She told him to stop, but he squeezed harder. After he let go, Wife remained lying on the floor, and Husband told her he was getting some ice from the kitchen for her to put on her neck.

{¶11} Wife further maintained that there had been previous incidents where Husband had used physical force against her. In March of 2014, the parties were on a flight while Wife was pregnant with their daughter. Husband became upset that he did not have the armrest to use, and he lifted his arm up and elbowed Wife on the side of her body. Wife maintained that, about a month later, while she was still pregnant, she discovered pornography on the parties' computer, and she woke up Husband to ask him about it. In response, Husband became enraged and forcefully grabbed her arm, leaving a large bruise on her right bicep. In addition, when their daughter was five days old, Wife recalled that Husband was upset and grabbed Wife's right

forearm while she was holding the baby. Thereafter, in September of 2014, Husband was attempting to enter the parties' bedroom, and he grabbed Wife's arm. In May of 2015, Husband threatened to "slam" Wife, and he chased her around the house and blocked the back door, preventing her from leaving. Wife maintained that on the instances when Husband would grab her arms, he would leave fingerprint bruises. However, when he grabbed her neck, she became scared for her life.

{¶12} On cross-examination, Wife acknowledged that she did not make police reports or seek medical treatment for the incidents that she had alleged occurred prior to May 23, 2015. She confirmed that she did not leave her house, call the police, or seek medical treatment directly following the incident on May 23, 2015. She maintained that, on May 24, 2015, she permitted Husband to hold the parties' daughter while she made telephone calls to her family members, and she called police that day. Although she did not seek medical treatment immediately following the May 23, 2015 incident, she maintained that she sought treatment from her primary care doctor on the Tuesday following the incident.

{¶13} Wife's counsel called Husband to testify at the hearing. However, on advice of counsel, due to a then pending criminal proceeding against Husband, he invoked his rights under the Fifth Amendment.

{¶14} On appeal, Husband argues that Wife's testimony was not credible because her actions of remaining in, and returning to, the marital residence, instead of immediately calling the police or seeking medical treatment, would have been unreasonable had Husband acted in such a way that would cause her to be in fear for her safety. However, our review of the record does not indicate that this is the exceptional case where the trial court lost its way in granting the CPO. Wife testified that the escalation of force used by Husband had caused her to be in fear of

imminent serious physical harm, and, although Husband maintains that her actions belied that statement, the magistrate was in the best position to judge the credibility of witnesses. *See In re E.L.*, 9th Dist. Summit No. 27527, 2015-Ohio-2502, ¶ 9 ("The magistrate * * * was in the best position to observe the demeanor of the witnesses, assess their credibility, and resolve any conflicts in the evidence.").

{¶15} Husband further asserts that the trial court erred in not conducting a de novo review of the magistrate's proceeding. However, Husband has not set forth any authority requiring the trial court to conduct a de novo review of a proceeding before the magistrate prior to adopting the magistrate's grant of a CPO under Civ.R. 65.1. *See* App.R. 16(A)(7). Further, Civ.R. 65.1 permits the trial court to adopt the magistrate's denial or grant of a CPO where, upon review of the order, the court determines that "there is no error of law or other defect evident on the face of the order." Civ.R. 65.1(F)(3)(c)(ii).

{¶16} Accordingly, Husband's second assignment of error is overruled.

III.

{¶17} Husband's assignments of error are overruled. The judgment of the trial court is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CARLA MOORE
FOR THE COURT

CARR, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

KENNETH J. CAHILL, Attorney at Law, for Appellant.

RANDAL A. LOWRY and KENNETH L. GIBSON, Attorneys at Law, for Appellee.