[Cite as *A.D. v. B.D.*, 2017-Ohio-229.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

A.D.

    Appellee

    v.

B.D.

    Appellant

C.A. No.    15CA0095-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    15DV0197

DECISION AND JOURNAL ENTRY

Dated: January 23, 2017

---

MOORE, Judge.

{¶1}    Respondent-Appellant B.D. ("Brother") appeals from the judgment of the Medina County Court of Common Pleas, Domestic Relations Division, granting Petitioner-Appellee A.D. ("Sister") a domestic violence civil protection order ("CPO"). We reverse.

I.

{¶2}    After a heated argument at the home of Brother and Sister's mother ("Mother") on Labor Day, September 7, 2015, which resulted in Brother's wife calling the police, Sister filed a petition for a CPO pursuant to R.C. 3113.31. An ex parte CPO was subsequently issued, which included a provision that Brother was to turn over all deadly weapons and that Brother could not use or possess alcohol or illegal drugs. Following a hearing before a magistrate, at which both parties proceeded pro se, a full-hearing CPO was granted. Sister and Sister's three children were listed as protected parties under the CPO. The full-hearing CPO maintained the requirements concerning weapons, alcohol, and drugs.

**{¶3}** Brother has appealed, raising three assignments of error for our review. Sister has not filed a brief in this matter. As such, we "may accept [Brother's] statement of the facts and issues as correct and reverse the judgment if [Brother's] brief reasonably appears to sustain such action." App.R. 18(C).

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FINDING BY A PREPONDERANCE OF THE EVIDENCE THAT [SISTER] OR [SISTER'S] FAMILY OR HOUSEHOLD MEMBERS ARE IN DANGER OR HAVE BEEN A VICTIM OF DOMESTIC VIOLENCE OR SEXUALLY ORIENTED OFFENSES AS DEFINED IN R.C. 3113.31(A) COMMITTED BY [BROTHER].

**{¶4}** Brother asserts in his first assignment of error that the trial court's decision to grant the CPO was based upon insufficient evidence.

**{¶5}** First, we note that this matter is governed by former Civ.R. 65.1. Under the former rule, a CPO "is a final appealable order that may be fully reviewed on appeal with or without objections being filed in the trial court." *J.B. v. Harford*, 9th Dist. Summit No. 27231, 2015-Ohio-13, ¶ 4, quoting *A.S. v. P.F.*, 9th Dist. Lorain No. 13CA010379, 2013-Ohio-4857, ¶ 4. Thus, we review the evidence underlying the CPO to determine whether sufficient evidence was presented or whether the issuance of the CPO was against the weight of the evidence. *J.B.* at ¶ 4.

**{¶6}** In evaluating the sufficiency of the evidence, "we must determine whether, viewing the evidence in the light most favorable to [the petitioner], a reasonable trier of fact could find that the petitioner demonstrated by a preponderance of the evidence that a civil protection order should issue." *R.C. v. J.G.*, 9th Dist. Medina No. 12CA0081-M, 2013-Ohio-4265, ¶ 7. "In order for a domestic violence CPO to issue, 'the trial court must find that

petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence.'" *C.Q. v. P.S.*, 9th Dist. Medina No. 15CA0065-M, 2016-Ohio-4988, ¶ 9, quoting *R.C.* at ¶ 8, quoting *Felton v. Felton*, 79 Ohio St.3d 34 (1997), paragraph two of the syllabus.

{¶7} R.C. 3113.31(A) provides that:

(1) "Domestic violence" means the occurrence of one or more of the following acts against a family or household member:

(a) Attempting to cause or recklessly causing bodily injury;

(b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 [(menacing by stalking)] or 2911.211 [(aggravated trespass)] of the Revised Code;

(c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code;

(d) Committing a sexually oriented offense.

{¶8} The offense of aggravated trespass provides that "[n]o person shall enter or remain on the land or premises of another with purpose to commit on that land or those premises a misdemeanor, the elements of which involve causing physical harm to another person or causing another person to believe that the offender will cause physical harm to him." R.C. 2911.211(A). The offense of menacing by stalking provides, in relevant part, that "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." Former R.C. 2903.211(A)(1). Thus, "R.C. 2903.211(A)(1) permits proof that the petitioner feared physical harm or suffered mental distress." *R.C.* at ¶ 9; *see also State v. Barnhardt*, 9th Dist. Lorain No. 05CA008706, 2006-Ohio-4531, ¶ 11 ("[I]n order to show that a defendant violated R.C. 2903.211, the State must show that the defendant engaged in conduct that he knew would probably cause the complainant to believe that defendant would harm her or

that he knew would 'probably cause' the complainant to suffer from mental distress."); *but see Holloway v. Parker*, 3d Dist. Marion No. 9-12-50, 2013-Ohio-1940, ¶ 23, fn.5.

{¶9} "'Pattern of conduct' means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents, or two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents, directed at one or more persons employed by or belonging to the same corporation, association, or other organization." Former R.C. 2903.211(D)(1). "Because R.C. 2903.211(D)(1) does not elaborate on the requirement that incidents must be closely related in time, that question must be considered with reference to all of the surrounding circumstances." (Internal quotations and citations omitted.) *R.C.* at ¶ 12. "A court must take everything into consideration when determining if a respondent's conduct constitutes a pattern of conduct, even if some of the person's actions may not, in isolation, seem particularly threatening." (Internal quotations and citations omitted.) *Id.* "A series of incidents may constitute a 'pattern of conduct' under the facts of a given case even if spread over the course of several years or across an intervening gap in time." *Id.*

"Mental distress" means any of the following:

(a) Any mental illness or condition that involves some temporary substantial incapacity;

(b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

Former R.C. 2903.211(D)(2).

{¶10} Brother and Sister are siblings and thus are family or household members pursuant to R.C. 3113.31(A)(3)(ii). Neither the magistrate nor the trial court made a specific finding with respect to which prong of the definition of domestic violence that Sister

demonstrated was satisfied. Accordingly, we examine the testimony of the full hearing and determine whether any prong was satisfied.

{¶11} The testimony at the full hearing revealed that the incident that precipitated Sister's request for a CPO was an altercation that occurred between Sister and Brother at Mother's home on Labor Day, September 7, 2015. However, even prior to that date, Sister and Brother had a history of verbal altercations. On September 7, 2015, Sister and her three children lived at Mother's house. Brother and Brother's wife had gone to the air show with some of their children but left their son, who was just over a year old, at Mother's house for her to babysit. Mother testified that, as the afternoon wore on, she became a little irritated that Brother had not yet returned to pick up his son. Sister sent Brother a text asking Brother whether he had forgotten his son. Mother was not happy that Sister had done that as she was afraid it would cause an argument.

{¶12} Late in the afternoon, Brother and Brother's wife returned to Mother's house to pick up their son. According to Mother, Brother began asking Sister about the text about his son. Sister began yelling and screaming and Brother followed suit. Sister asked Brother to leave and Brother left. After Brother got in the car he received another text message from Sister stating that he was no longer welcome at Mother's house anymore. Brother's wife and the children stayed in the car but Brother went back in the house to ask Mother if what Sister wrote was true. Mother indicated that it was not.

{¶13} At this point, another sibling, Lauren, indicated that Sister began yelling and screaming. Lauren testified that she saw Sister hit Brother in the face and saw her leg fly up and her shoe fly off, although she did not know whether Sister kicked Brother as well. Brother

testified that Sister punched him. However, Sister adamantly denied that she actually struck Brother, although she admitted that she attempted to hit him, but missed.

{¶14} Sister indicated that Brother berated her for 45 minutes and that Sister kept asking him to leave but he refused. Sister acknowledged that Brother did initially leave but that he came back and continued yelling at her. Sister testified that Brother "[got] in [her] face[,]" yelled at her, and called her names in front of her children. She did later acknowledge that only her son was around her at the time of the altercation. Sister stated that Brother told her she "was good as nothing, good as dead. [She's] worthless. [She] mean[s] nothing." Sister testified that she attempted to hit Brother only after he told her she was "good as dead[.]" Sister perceived these statements as a threat. Sister acknowledged that she did previously tell Brother via a text message that his family was "dead to [her]." However, she testified that in saying that she was not threatening Brother or his family; instead, she was saying that she wanted nothing to do with him.

{¶15} Once the altercation got physical, Lauren grabbed Sister's son and took all of the children and went outside. When Brother did not return, Brother's wife called Brother. Brother's wife heard screaming on the other end of the line, and Brother saying that he had been punched and to call the police. Brother's wife thereafter called the police.

{¶16} Brother denied telling Sister that she was "good as dead[,]" but admitted to calling her names. Lauren and Mother indicated that they never heard Brother tell Sister she was "good as dead." Mother confirmed, however, that she had heard Sister tell Brother that he, his wife, and children were dead to Sister.

{¶17} When the police arrived a police report was completed which was admitted into evidence. The report indicated that Brother and Sister had been in a verbal altercation, that

Brother claimed Sister hit him, but Sister denied hitting him. Instead, Sister admitted to attempting to hit Brother. The report indicates that no primary aggressor could be determined. Brother initially did not wish to press charges, but later contacted police stating that he had reconsidered. Police directed Brother to the Brunswick City Prosecutor.

{¶18} Brother initially testified that Sister was charged with domestic violence, but later stated that he thought she may have been charged with disorderly conduct. Sister admitted that she was charged with disorderly conduct in relation to the September 7, 2015 incident and stated that she only had to pay a fine. She also admitted that Brother was not charged with anything in relation to the altercation.

{¶19} Sister also testified about past issues between herself and Brother. She indicated that Brother would come over to Mother's house and yell at her, and call her names in front of Sister's children. She claimed that Brother "just constantly gets in [her] face, and it's to the point where [she] honestly can't take it anymore * * *." Sister claimed that Brother would act like that when he did not smoke marijuana. Brother admitted to occasionally smoking marijuana but Brother's wife denied that his use or non-use of marijuana affected his mood.

{¶20} Sister also testified that she used to live in one of Brother's rental properties and he threatened to lock her out and eventually evicted her because Brother claimed that Sister was harassing him. Sister claimed that she kept asking Brother to do repairs that he needed to complete. Additionally, Sister relayed problems between Brother and Brother's wife. Sister averred that Brother's wife would usually call her to go over to Brother's wife house after Brother and Brother's wife had an argument. Sister alleged that three months prior to Labor Day, Brother's wife called Sister over after Brother urinated on Brother's wife, broke Brother's wife's phone, and kicked her out of the house. Sister sat with Brother's wife waiting for the

police to come. Sister testified that she has gone over to support Brother's wife after other arguments.

{¶21} Brother's wife agreed that she and Brother have gotten into arguments, but denied that he ever hit her. Brother's wife acknowledged that she had had Sister come over and talk with her after Brother's wife and Brother had been in arguments. Brother's wife indicated that their arguments have only been verbal arguments and that the police have only been called three times in their entire relationship.

{¶22} Sister claimed that two years prior, Brother and Sister had an argument and that she was trying to leave and Brother hit the back of her car with his car so that she could not leave. Sister testified that she believed he got disorderly conduct for that incident. Brother denied hitting Sister's car and instead testified that Sister was drunk and backed into his car. Sister maintained that on September 7, 2015, when she told Brother she was going to leave, he told her "good luck[,]" because he was parked behind her. Brother admitted that he told Sister "good luck" in getting out because he parked behind her. However, he said that he did not actually park behind her and only said that because Sister had just punched him.

{¶23} When asked whether she believed Brother was a threat to her and whether she was in danger of domestic violence, Sister answered affirmatively.

{¶24} Here, we cannot say that there is sufficient evidence to support the conclusion that Sister and Sister's children were in danger of domestic violence as that term is defined in R.C. 3113.31(A)(1)(a), (c), or (d). There is nothing to suggest that Brother attempted to cause Sister or Sister's children bodily injury, committed an act that resulted in Sister's children being abused children, or committed a sexually oriented offense against Sister or Sister's children. *See* R.C. 3113.31(A)(1)(a), (c), (d). Accordingly, our focus is on R.C. 3113.31(A)(1)(b).

**{¶25}** R.C. 3113.31(A)(1)(b) provides that domestic violence includes "[p]lacing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 [(menacing by stalking)] or 2911.211 [(aggravated trespass)] of the Revised Code[.]" As noted above, aggravated trespass involves trespass along with an element of physical harm; that element of physical harm was not substantiated by the record. *See* R.C. 2911.211.

**{¶26}** With respect to whether Brother placed Sister in fear of imminent serious physical harm by threat of force, from the record it appears the only comment that Sister viewed as a threat was Brother's alleged statement that Sister was "good as dead." "Under Ohio law, in order for threats of violence to constitute domestic violence, the fear resulting from th[e] threats [must be] reasonable." (Internal quotations and citations omitted.) *M.K. v. J.K.*, 9th Dist. Medina No. 13CA0085-M, 2015-Ohio-434, ¶11. "Reasonableness is determined by referencing the petitioner's history with the respondent." (Internal quotations and citations omitted.) *Id.* "Yet, past incidents of domestic violence, standing alone, cannot form the basis of a petitioner's fear of imminent serious physical harm." *Id.* "Imminent has been defined as ready to take place, near at hand, impending, hanging threateningly over one's head, or menacingly near." (Internal quotations and citations omitted.) *Id.* "This Court has recognized that both the totality of the circumstances, as well as the victim's state of mind, are relevant to the determination that the threat of harm was imminent." (Internal quotations and citations omitted.) *Id.*

**{¶27}** While we do not dispute there are circumstances that could lead one to view such a statement as a threat of force that could place someone in fear of imminent serious physical harm, here, when the statement is read in context, it is difficult to conclude that such a statement amounted to a threat of force that would have placed Sister in fear of imminent serious physical

harm, even when viewing it in a light most favorable to Sister. According to Sister, Brother told her that she "was good as nothing, good as dead. [She's] worthless. [She] mean[s] nothing." Sister testified that she viewed Brother's comment that she was "good as dead" as a threat. Sister admitted during her testimony, however, that she had made similar statements to Brother in the past, texting him that his family was "dead to [her]." However, she testified that in saying that she was not threatening Brother or his family; instead, she was saying that she wanted nothing to do with him. The statement that Sister was "good as dead[,]" when considered along with the other comments made by Brother would also seem to only reasonably indicate that Brother did not think much of Sister's value, not that Brother was threatening to harm Sister. Further, Sister never claimed that Brother attempted to strike Sister at all during the altercation. In fact, it was Sister that, by her own testimony, attempted to hit Brother. Moreover, ultimately, it was Sister that had charges filed against her in relation to the altercation.

{¶28} Sister did testify that, two years before the Labor Day altercation, following another argument, Sister was trying to leave and Brother hit her car with his car; however, only limited details about that event were provided. It is unclear whether Sister's vehicle was damaged or whether Sister was injured. According to Sister, Brother was only charged with disorderly conduct in relation to that incident. While Sister did present testimony indicating that Brother and Brother's wife had their fair share of heated verbal arguments, Sister did not present evidence that Brother ever struck his wife. The record is clear that Sister and Brother had a tumultuous relationship that included many verbal arguments. Nonetheless, the record is devoid of evidence of Brother hitting Sister, attempting to hit her, or even threatening to do so. Thus, even if Brother's comment amounted to a veiled threat of force, we cannot conclude that such a comment would reasonably put Sister in fear of imminent serious physical harm. *See id.*

{¶29} Considering the entirety of the circumstances, we cannot say that sufficient evidence was presented that she and her children were in danger of being placed in fear of imminent serious physical harm via a threat of force from Brother.

{¶30} Finally, we likewise cannot say that Sister demonstrated that Brother committed menacing by stalking. As stated above, the statute prohibiting menacing by stalking provides that "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." Former R.C. 2903.211. "As to whether the offender engaged in the conduct at issue in order to cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person, the State need not prove that the offender explicitly threatened the victim. Instead, the offender's knowledge that the conduct will result in the victim fearing physical harm or suffering mental distress can be inferred by the circumstances." (Internal quotations and citations omitted.) *J.B.*, 2015-Ohio-13, at *¶* 8. For the reasons discussed above, we cannot conclude that sufficient evidence was presented that Brother engaged in a pattern of activity that would cause Sister to believe Brother would cause her or her children physical harm.

{¶31} Additionally, we cannot conclude that sufficient evidence was presented with respect to the mental distress prong of the statute. Mental distress is defined to mean "[a]ny mental illness or condition that involves some temporary substantial incapacity[]" or that normally requires professional treatment. Former R.C. 2903.211(D)(2). "Substantial incapacity does not mean that the victim must be hospitalized, or totally unable to care for herself. Incapacity is substantial if it has a significant impact upon the victim's daily life." *J.B.* at ¶ 9, quoting *State v. Payne*, 178 Ohio App.3d 617, 2008-Ohio-5447, ¶ 9 (9th Dist.). While Sister

testified that her Brother's actions have brought her "to the point where [she] honestly can't take it anymore[,]" she did not further elaborate on how her Brother's actions have affected her daily life, or whether they have in fact affected her daily life. Additionally, there was no testimony that Sister suffered from a mental illness or condition that would normally require professional treatment. *See R.C.*, 2013-Ohio-4265, at ¶ 9 ("R.C. 2903.211(A)(1) permits proof that the petitioner feared physical harm or suffered mental distress.").

{¶32} We cannot conclude that sufficient evidence was presented that Sister and her children were in danger of domestic violence by Brother committing menacing by stalking.

{¶33} As a review of the record reveals that there was insufficient evidence presented to establish by a preponderance of the evidence that Sister and her children were in danger of domestic violence, we sustain Brother's first assignment of error.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT'S DECISION TO GRANT [SISTER'S] PETITION FOR A [CPO] WHICH NAMED AS PROTECTED PERSONS [SISTER] AND HER THREE CHILDREN IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN EXPANDING THE SCOPE OF THE [CPO] TO PRECLUDE [BROTHER] FROM POSSESSING, USING, CARRYING OR OBTAINING ANY DEADLY WEAPON AND FROM USING OR POSSESSING ALCOHOL OR ILLEGAL DRUGS.

{¶34} In light of our resolution of Brother's first assignment of error, we conclude the remaining two assignments of error are moot and we decline to address them. *See* App.R. 12(A)(1)(c).

III.

{¶35} The judgment of the Medina County Court of Common Pleas, Domestic Relations Division, is reversed, and the matter is remanded for proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

CARLA MOORE
FOR THE COURT

SCHAFER, J.
CONCURS.

CARR, P. J.
DISSENTS.

APPEARANCES:

GERALD D. PISZCZEK, Attorney at Law, for Appellant.

A.D., pro se, Appellee.