**[Cite as *Weber v. Weber*, 2011-Ohio-2980.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| LESA M. WEBER | : | |
| | : | Appellate Case No. 2010-CA-40 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2010-DV-91 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| DAVID L. WEBER | : | Court, Domestic Relations) |
| | : | |
| Defendant-Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 17th day of June, 2011.

. . . . . . . . . . .

LESA M. WEBER, 3632 North Lakeshore Drive, Jamestown, Ohio 45335
      Plaintiff-Appellee, *pro se*

DAVID S. PETERSON, Atty. Reg. #0007836, 87 South Progress Drive, Xenia, Ohio 45385
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} David Weber appeals the domestic violence civil protection order entered against him protecting Lesa Weber.[1]

{¶ 2} David and Lesa divorced in 1991. In 1999, Lesa was granted her first domestic

---

[1] Lesa did not file an appellee's brief.

violence civil protection order against David. Soon after the protection order expired, in 2004, Lesa borrowed money from David. In January 2005, David obtained a judgment against Lesa for the amount that she had borrowed. Five years later, in mid-May 2010, David sent Lesa a letter that says, "Lesh. I got your address off the internet. Not upset, give me a call at [telephone number]. Your Ex Dave. No strings." A few days after receiving the letter, Lesa petitioned the Greene County Domestic Relations Court for another domestic violence civil protection order, which a magistrate entered ex parte. On May 28, 2010, Lesa and David both appeared pro se before the domestic relations court for a full hearing.

{¶ 3}   Lesa testified first. She admitted that David did not try to contact her during the five years that the 1999 protection order was in effect. Lesa further admitted that after the protection order expired in 2004 and before she received the letter the only contact that she had with David was when she borrowed the money and during the ensuing court case. Lesa admitted that she has not satisfied any of the judgment. The judge asked Lesa, "Did he contact you before you asked him for money?" (Tr. 23). "Yes," Lesa replied, "he contacted me and he showed up at my apartment and I let him in." (Tr. 23). "Ok," said the judge, "so you were afraid of him back in '99 you had an order but then after that expired you weren't afraid of him and you contacted him." (Tr. 11). Lesa responded, "Sir, I've never stopped being afraid of him." (Tr. 11). The judge later revisited the topic: "You went to a guy you alleged and apparently had proven to this Court had committed domestic violence towards you?" (Tr. 11). Lesa admitted that she made a mistake when she borrowed money from David. But, she said, "I don't, nineteen years I've been divorced from him and I've put up with more than, there's no reason why I should have to, none at all. I shouldn't have" (Tr. 13). The court then

interjected:

{¶ 4} "The Court: I'm trying to find out what it is you're having to put up with. Between the time the

{¶ 5} "[LESA]: because once he starts and he finds out where I'm at he's not gonna leave me alone.

{¶ 6} "The Court: Ok let me get it straight. So you're afraid he's going to continue from this point on?

{¶ 7} "[LESA]: Yes sir.

{¶ 8} "The Court: The only contact that you've had with him so far . . .

{¶ 9} "[LESA]: Is in the Court.

{¶ 10} "The Court: When he had a legal right to take you to Court.

{¶ 11} "[LESA]: Yes, sir.

{¶ 12} "The Court: And you dealt with that with a judge or a magistrate and after that was over, was there any contact?

{¶ 13} "[LESA]: No sir.

{¶ 14} "The Court: Not until this letter?

{¶ 15} "[LESA]: Exactly."

{¶ 16} (Tr. 13-14).

{¶ 17} After Lesa testified about the court case and letter, the judge turned to David and said, "why don't we just grant the order that you have no contact with her other than through the court system in an effort to potentially collect your judgment? What other possible reason could you have for wanting to have contact with her?" (Tr. 16). David told the court

that he wanted to contest the petition both because he did not want a protection order on his record and because he never abused her. The last reason seems to have raised the judge's hackles: "Are you saying you don't think I can take into account the past history between the two of you?" (Tr. 18). When David conceded that the court could, the judge said, "Alright, so all that's fair game, so Ms. Weber tell me a little bit about what more happened prior to the 1999 DV being granted to you." (Tr. 18). Lesa proceeded to tell the judge about several prior instances of domestic violence that she alleged to have endured at David's hands.

{¶ 18} Then it was David's turn. He denied Lesa's allegations of abuse, and he painted for the judge a very different picture of certain instances. When the judge asked why he had written the letter, David replied that he wrote it for two reasons: "One, I wanted to inform Mrs. Weber of my new address, where I live." (Tr. 35). "The second reason, I wanted to know if she wanted to reconcile." (Tr. 36). Nothing David said during the hearing suggested that he harbored any animosity for Lesa. When the judge asked Lesa if she wanted to question David, she said only, "I just want him to leave me alone." (Tr. 34).

{¶ 19} The judge granted Lesa's petition and entered a domestic violence civil protection order effective for 5 years that excludes David's attempts made through the legal system to collect on the judgment. The judge explained:

{¶ 20} "The Court: * * * One of the things I get to do up here is try to decide who is lying the least.

{¶ 21} "* * *

{¶ 22} "The Court: It's pretty clear in all these cases most people embellish their stories and in this case I'm going to err on the side of safety and find that I, find her story more

credible. Going to grant the order and the exception to the order will be that you can pursue your judgment through the proper valid legal channels." (Tr. 40-41).

{¶ 23} "The Court: You sent a letter that to a reasonable person could in their mind put them in fear that the things that happened before might happen again and that's the reason for granting the order again.

{¶ 24} "* * *

{¶ 25} "The Court: You had an order; the Court granted an order before; it wasn't appealed. It was an order of the Court, findings of the Court that you did things that caused her or threatened to cause her physical harm. * * *

{¶ 26} "* * *

{¶ 27} "The Court: The letter here indicates that you're contacting her again. In her mind everything fl[a]shes back, flashes right back in front of her eyes that happened before and to me that put her in again fear that you once again get into a situation where you can cause her physical harm again."   (Tr. 45-46).

{¶ 28} David timely appealed.

{¶ 29} We will first address the second assignment of error.


**Second Assignment of Error**

{¶ 30} "THE TRIAL COURT'S DECISION TO UPHOLD APPELLEE'S PETITION FOR A DOMESTIC VIOLENCE CIVIL PROTECTION ORDER PURSUANT TO R.C. 3113.31 WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 31} The standard that this Court uses to review appeals of domestic violence civil

protection orders depends on what it is about the order that is challenged. See *Williamson v. Williamson*, 180 Ohio App.3d 260, 2008-Ohio-6718, at ¶37 (Citation omitted.). When the scope of the order is challenged, we review for abuse of discretion. Id. But if it is the grant of the order that is challenged, we examine the evidence. Id. In both the assignments of error here David argues that the lower court erred by granting the protection order. Therefore we will examine only the evidence. The question is whether the record contains some competent, credible evidence that Lesa, the petitioner, is in danger of domestic violence. See *Gaydash v. Gaydash*, 168 Ohio App.3d 418, 2006-Ohio-4080, at ¶9 (Citation omitted.).

{¶ 32} "Domestic violence" means, with respect to a family or household member, (1) attempting to cause or causing bodily injury, (2) threatening serious physical harm or committing either menacing by stalking or aggravated trespass, (3) abusing a child, or (4) committing a sexually oriented offense. R.C. 3113.31(A)(1). It is the petitioner's burden to prove, by a preponderance of the evidence, that there is a danger of domestic violence. *Felton v. Felton* (1997), 79 Ohio St.3d 34, at paragraph two of the syllabus, citing R.C. 3113.31(D).

{¶ 33} In this case, the only pertinent meaning of domestic violence is the second. Lesa testified that David committed acts of domestic violence against her 11 years ago. But she did not allege that David committed any acts of domestic violence since then, nor did Lesa allege that he threatened to commit such acts. "The statutory criterion to determine whether or not to grant a civil protection order pursuant to R.C. 3113.31 is the existence or threatened existence of domestic violence." *Thomas v. Thomas* (1988), 44 Ohio App.3d 6, 8. "[W]hile the court may consider past acts to determine whether the incident at issue constitutes domestic violence, the issuance of a civil protection order cannot be based solely on previous

incidents of alleged domestic violence." *Solomon v. Solomon*, 157 Ohio App.3d 807, 2004-Ohio-2486, at ¶23 (Citation omitted.). "Rather, the petitioner must establish by a preponderance of the evidence that an act of domestic violence occurred on the date set forth on the petition for a civil protection order." Id. (Citations omitted.).

{¶ 34} There is no evidence in the record that David threatened Lesa. In her petition, the only recent act of domestic violence that Lesa alleges was David's sending her the letter. But the letter contains no obvious threatening language, and Lesa did not testify that the words are a veiled threat. The only domestic violence that Lesa testified about occurred before 1999. That testimony does not constitute enough evidence from which it may be inferred that she is presently in danger of domestic violence. The criterion in R.C. 3113.31 and the evidence in the record compel us to conclude that the lower court erred by entering a domestic violence civil protection order against David.

{¶ 35} The second assignment of error is sustained.

### The First Assignment of Error

{¶ 36} The first assignment of error, to the effect that the trial court abused its discretion by granting the protection order, is rendered moot by our disposition of the second assignment of error.

{¶ 37} The judgment of the domestic relations court is Reversed.

. . . . . . . . . . . . .

GRADY, P.J., and DONOFRIO, J., concur.

(Hon. Gene Donofrio, Seventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:
Lesa M. Weber
David S. Peterson
Hon. Steven L. Hurley