[Cite as *Wetterman v. B.C.*, 2013-Ohio-57.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| JOHN A. WETTERMAN | C.A. No.    12CA0021-M |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| B.C. | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellee | CASE No.    2011 08 CPO 0014 |

DECISION AND JOURNAL ENTRY

Dated: January 14, 2013

CARR, Judge.

{¶1}    Appellant, John Wetterman, appeals the order of the Medina County Court of Common Pleas, Juvenile Division, denying his petition for a protection order on behalf of his son, J.W.  This Court affirms.

I.

{¶2}    Wetterman and Margaret Pavka have a five year old son, J.W., together.  Pavka also has a fourteen year old daughter, B.C.  Sometime around June 2009, it was discovered that B.C. had sexually abused J.W. and Wetterman sought custody of J.W. in domestic relations court.  The court granted Wetterman emergency temporary custody and permitted Pavka visitation, on the condition that B.C. was not present.  As a result of the custody case, both B.C. and J.W. began to see psychologists regularly and J.W. was appointed a guardian ad litem.  The domestic relations case remains pending.

**{¶3}** In August 2011, Wetterman filed a petition in Medina County Juvenile Court for a protection order on behalf of his son, J.W. In his petition, Wetterman alleged that B.C. had sexually assaulted J.W. between February and June 2009 and that this "conduct * * * has caused [J.W.] serious emotional conflict and fear." Wetterman requested the court order the two children have no contact with one another.

**{¶4}** The court denied Wetterman's request for an emergency protection order, but scheduled the matter for a full hearing. Wetterman, B.C., and Pavka were in attendance at the hearing, and all three were represented by counsel. At the beginning of the hearing, B.C. waived her right to be present and the court excused her, leaving her attorney to protect her interests. The parties then stipulated that "[a]n act was committed by [B.C.] against [J.W.] which constituted a sexually-oriented offense." No further evidence of the offense was presented. The court proceeded to hear testimony from Wetterman and Pavka. Neither of the children's psychologists testified at the hearing.

**{¶5}** The magistrate ultimately denied Wetterman's request for a protection order finding that he had not established that J.W. was in danger of domestic violence. Wetterman timely objected, and the court issued an order overruling his objections and adopting the magistrate's decision. Wetterman now appeals and raises a single assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED IN ITS ORDER OF MARCH 1, 2012 WHEN IT ADOPTED THE MAGISTRATE'S DECISION AND HELD THAT IN ORDER TO BE GRANTED A JUVENILE DOMESTIC VIOLENCE CIVIL PROTECTION ORDER, A PETITIONER MUST PROVE THAT HE IS IN DANGER OF FUTURE ACTS OF DOMESTIC VIOLENCE.

{¶6} Wetterman argues that the court erred when it found that Wetterman was required to prove that J.W. was in danger of further domestic violence when the parties had already stipulated to past abuse. This Court disagrees.

{¶7} "Generally, absent an error of law, 'the decision to adopt, reject, or modify a magistrate's decision lies within the discretion of the trial court and should not be reversed on appeal absent an abuse of discretion.'" *Cirino v. Cirino*, 9th Dist. No. 11CA009959, 2011-Ohio-6332, ¶ 7, quoting *Barlow v. Barlow*, 9th Dist. No. 08CA0055, 2009-Ohio-3788, ¶ 5. An abuse of discretion indicates that the court's decision was arbitrary, unconscionable, or unreasonable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶8} In our review, "we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. No. 08CA0049-M, 2009-Ohio-3139, ¶ 18. Generally, a trial court's decision to grant or deny a protection order is reviewed on appeal under a civil manifest weight standard. *Donovan v. Donovan*, 9th Dist. No. 11CA010072, 2012-Ohio-3521. ¶ 5. Here, however, Wetterman's assignment of error requires an interpretation of R.C. 2151.34. "The interpretation of statutory authority is a question of law that is reviewed de novo." *In re M.M.*, 9th Dist. Nos. 10CA009744, 10CA009745, 10CA009746 & 10CA9747, 2010-Ohio-2278, ¶ 8. "The primary goal of statutory construction is to ascertain and give effect to the legislature's intent in enacting the statute." *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, ¶ 9.

Purpose of Protection Orders

{¶9} The civil domestic violence protection order is designed to provide the court with a tool in which "to bring about a cessation of domestic violence against the family or household member." R.C. 3113.31(E)(1). Thus, protection orders are intended to prevent further domestic

violence. *Felton v. Felton*, 79 Ohio St.3d 34, 41 (1997). "When granting a protection order, the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner * * * [is] in danger of domestic violence." *Felton* at paragraph two of the syllabus; R.C. 3113.31.

{¶10} R.C. 2151.34, the Shynerra Grant Law, was enacted in 2010 and provides the juvenile court with jurisdiction to issue civil protection orders between minors. The statute permits the court to issue a protection order with "terms designed to ensure the safety and protection of the person to be protected by the protection order." R.C. 2151.34(E)(1)(a). "The juvenile civil protection order statute, R.C. 2151.34, is similar to the civil domestic violence statute, R.C. 3113.31, in that both are designed to protect the petitioner from *future* harm." (Emphasis sic.) *In re E.P.*, 8th Dist. No. 96602, 2011-Ohio-5829, ¶ 29.

{¶11} The purpose of the civil protection order is not to address past abuse. "The statutory criterion to determine whether or not to grant a civil order pursuant to R.C. 3113.31 is the existence or threatened existence of domestic violence." *Weber v. Weber*, 2d Dist. No. 2010-CA-40, 2011-Ohio-2980, ¶ 33, quoting *Thomas v. Thomas*, 44 Ohio App.3d 6, 8 (10th Dist.1988). In *Weber*, the Second District reversed the trial court's decision to grant a protection order even though the petitioner had previously received a protection order against the respondent because of domestic violence. *Id* at ¶ 34. The court found that the prior domestic violence "does not constitute enough evidence from which it may be inferred that [the petitioner] is *presently* in danger of domestic violence." (Emphasis added.) *Id*.

{¶12} Evidence of past abuse, however, is relevant and may be an important factor in determining whether there is a reasonable fear of further harm. *Solomon v. Solomon*, 157 Ohio App.3d 807, 2004-Ohio-2486, ¶ 27 (7th Dist.). *See also Osherow v. Osherow*, 9th Dist. No.

21407, 2003-Ohio-3927, ¶ 12. Nevertheless, even with established past abuse there must be some competent, credible evidence that there is a present fear of harm. *Holland v. Garner*, 12th Dist. No. CA2009-09-226, 2010-Ohio-2963, ¶ 9, quoting *Solomon* at ¶ 27. *Accord Newhouse v. Williams*, 167 Ohio App.3d 216, 2006-Ohio-3075, ¶ 15 (3d Dist.) ("In addition to the past events, there must be some evidence of current domestic violence, as set forth the in the statute."); *Williamson v. Williamson*, 180 Ohio App.3d 260, 2008-Ohio-6718, ¶50 (2d Dist.) ("showing only that the respondent committed an act of domestic violence in the past is not enough").

{¶13} Having reviewed R.C. 2151.34 and the purpose of civil protection orders, we conclude that the petitioner must establish that he or she (or the person the petitioner is seeking relief on behalf of) is in danger of further domestic violence before a protection order may be issued under R.C. 2151.34. We now review the record to determine if Wetterman has met his burden.

Competent, Credible Evidence of Present Harm

{¶14} Wetterman filed a petition for a juvenile civil protection order in Medina County Juvenile Court. The court held a hearing on the matter at which the parties stipulated that "[a]n act was committed by [B.C.] against [J.W.] which constituted a sexually-oriented offense." No further evidence of the offense was submitted into evidence. The court proceeded to hear testimony from Wetterman and Pavka. Neither of the children's psychologists were called to testify at the hearing.

{¶15} Wetterman explained that he saw a change in J.W.'s behavior when J.W. returned from visits with Pavka when B.C. was present. Wetterman explained why he was requesting the court issue a no contact order:

I just want [J.W.] to be able to grow up without reliving what was done to him, without constantly going back to his dark place. Just - - I feel bad for him if he's forced to relive that.

{¶16} Wetterman never testified that he feared B.C. would commit future offenses against J.W. or that J.W. was at risk of further abuse from B.C. Instead, Wetterman's attorney argued "[t]he danger to [J.W.] is inherent in the act that was committed against him."

{¶17} Pavka testified that both B.C. and J.W. are currently seeing psychologists regularly and that she is working with both doctors toward reunification. This process, according to Pavka, is going slowly. In late 2010, J.W. and B.C. met with the psychologists for an "apology session", followed, according to Pavka, with a couple of other meetings at J.W.'s psychologist's office. The children had also begun to meet in public places, under Pavka's supervision. However, no meetings have taken place recently because, according to Pavka, Wetterman has failed to timely schedule appointments with the doctor's office. Therefore, Pavka testified, they had to start all over.

{¶18} In addition to working with the psychologists on reunification, Pavka testified that she had developed a safety plan to "protect both children when they're together." Pavka developed the safety plan on her own, with input from B.C.'s psychologist, and shared the plan with J.W.'s psychologist, his guardian ad litem, and Wetterman. As part of the safety plan, Pavka installed alarms on the outside of B.C.'s bedroom door and on the inside of her bedroom door that she shares with J.W. Pavka testified that the alarms were there to notify her if B.C. were to wake in the middle of the night.

{¶19} Pavka explained that reunification was important because the two are half-siblings and she wanted the children to "get through this together and move on from it so that they can have healthy relationships down the road." Pavka also stated that she would follow the

recommendations of the psychologists on how to best handle the reunification. Moreover, in compliance with the order of the domestic relations court, the children have not been together for the last year. The magistrate found, and the parties do not dispute, that a domestic relations court order currently exists requiring Pavka to keep the children separated until contact is recommended by the children's psychologists.

{¶20} There is no evidence in the record that would support the conclusion that J.W. suffers a present risk of abuse from B.C. B.C. sexually assaulted J.W. between January and June 2009, approximately two and a half years before the protection order hearing. Contact between the children has been restricted and closely supervised ever since. As a result of a pending domestic relations case both J.W. and B.C. are regularly seeing psychologists and J.W. has been appointed a guardian ad litem. Pavka is working with the psychologists towards reunification and testified that she intends on following the recommendations of the doctors on how this goal should be achieved. The children have not had contact with each other in approximately one year. Furthermore, Pavka has developed a safety plan and installed alarms on the bedroom doors so that she will be warned if B.C. leaves her room during the night.

{¶21} Because Wetterman had not established by competent and credible evidence that J.W. was presently at risk of domestic violence, he was not entitled to a civil protection order under R.C. 2151.34. The court did not err in denying his petition for a protection order. Accordingly, Wetterman's assignment of error is overruled.

III.

{¶22} Wetterman's assignment of error is overruled. The judgment of the Medina County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

WHITMORE, P. J.
CONCURS.

MOORE, J.
DISSENTING.

{¶23} I must respectfully dissent from the majority's decision to overrule Mr. Wetterman's (Father's) assignment of error. The parties stipulated that B.C. sexually abused J.W. when he was two years old and she was eleven. For the next couple of years, there has been

limited contact between the two minors. At the hearing on the petition for a protection order, Father testified to efforts of Mother to reunite the minors, and to the changes in J.W.'s behavior after returning from visits with Mother when B.C. was present. J.W. was four years old at the time of the hearing.

**{¶24}** The majority relies on case law for the proposition that past abuse is not sufficient to establish current danger for purposes of supporting a petition for a civil protective order. *Thomas v. Thomas*, 44 Ohio App.3d 6, 8 (10th Dist.1988); *Weber v. Weber*, 2d Dist. No. 2010-CA-40, 2011-Ohio-2980, ¶ 33; *Solomon v. Solomon*, 157 Ohio App.3d 807, 2004-Ohio-2486, ¶ 23 (7th Dist.). Each case cited by the majority involves an adult victim of domestic violence, not a minor. In each case, the adult (typically the spouse of the abuser), is capable of assessing impending danger, seeking protection, and reporting abuse to the authorities. J.W. was a minor child of tender years. He lacked the ability to advocate for himself or to protect himself, or for that matter to fully process what he was experiencing.

**{¶25}** *Holland v. Garner*, 12th Dist. No. CA2009-09-226, 2010-Ohio-2963, was cited by the majority for the proposition that proof of a past act of domestic violence is not enough to demonstrate future risk. Even *Holland* involves an adult couple with a child in common. *Id*. at ¶ 2. The mother of the child sought a protective order against the father. *Id*. The petition was not sought to protect a minor child of tender age such as J.W. Further, in that case, the court of appeals actually affirmed the trial court's *grant* of the petition for a civil protection order. The opinion concludes as follows:

> According to the record, in granting the DVCPO, the trial court stated, "[o]kay, look, just based on past history alone, sir, I'm going to grant the [DVCPO] as it relates to [appellee]." While it is troublesome the trial court's statement indicates it based its decision on past acts alone, we find sufficient, credible evidence in the record to support a finding that appellant engaged in acts or threats of domestic

violence [by stating] * * * "he could do what he wants, when he wants with [her]."

*Id*. at ¶ 10.

{¶26} While appellant has not explicitly set forth a current threat, I agree with him that the danger is inherent based on the child's youth. The majority stresses that no harm has come to J.W. by the hand of B.C. over the past couple of years. However, Father testified to the changes in J.W.'s affect after visits with Mother when B.C. was present. Further, the absence of any recent harm or danger may lie in the fact as stated by the majority that "[c]ontact between the children has been restricted and closely supervised * * * since [the sexual assault]." Under the circumstances presented in the record before us, I would reverse the trial court's denial of Father's petition for a civil protective order, as I believe it is unreasonable, given the vulnerability of the minor child.

APPEARANCES:

STEVE C. BAILEY, Attorney at Law, for Appellant.

JOSEPH F. SALZGEBER, Attorney at Law, for Appellee.