[Cite as *K.B. v. B.B.*, 2017-Ohio-71.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

K.B.

    Appellee

    v.

B.B.

    Appellant

C.A. No.    28129

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DR-2015-07-1999

DECISION AND JOURNAL ENTRY

Dated: January 11, 2017

SCHAFER, Judge.

{¶1}    Respondent-Appellant, B.B. ("Husband"), appeals the judgment of the Summit County Court of Common Pleas, Domestic Relations Division, granting a domestic violence civil protection order in favor of Petitioner-Appellee, K.B. ("Wife"), and her minor child, C.P. We reverse.

I.

{¶2}    Husband and Wife have been in a relationship since 2010. During the course of their relationship, but prior to their marriage, Wife gave birth to C.P. Although Husband was not listed on C.P.'s birth certificate, Husband was present at C.P.'s birth and believed he was C.P.'s father.

{¶3}    Husband and Wife separated in May 2015 and Wife filed for divorce. Subsequently, Wife filed a petition for a domestic violence civil protection order with children. The magistrate did not issue an ex parte CPO, but did set the matter for a full hearing. After the

full hearing, the magistrate issued a two-year domestic violence civil protection order that named Wife and C.P. as protected persons. Although Husband objected to the magistrate's decision, the trial court approved and adopted the domestic violence civil protection order.

{¶4} Husband filed this timely appeal, raising three assignments of error for this Court's review. As Husband's first and second assignments of error implicate similar issues, we elect to address them together.

## II.

### Assignment of Error I

**The trial court erred in granting [Wife] a Civil Protection Order covering her and C.P. over incidents, which if true, ceased 1) a year prior and 2) a year and a half prior to the hearing, where there was no evidence of any other incidents.**

### Assignment of Error II

**The trial court erred in finding that [Wife] met her burden of showing by a preponderance of the evidence that [Wife] or [Wife]'s family are in danger of domestic violence.**

{¶5} In his first and second assignments of error, Husband argues that the evidence presented at the full hearing was insufficient to support the issuance of a domestic violence civil protection order. We agree.

{¶6} "'In order to grant a [domestic violence civil protection order], the court must conclude that the petitioner has demonstrated by a preponderance of the evidence that the petitioner * * * [is] in danger of domestic violence.'" *M.K. v. J.K.*, 9th Dist. Medina No. 13CA0085-M, 2015-Ohio-434, ¶ 7, quoting *B.C. v. A.S.*, 9th Dist. Medina No.13CA0020-M, 2014-Ohio-1326, ¶ 7. When assessing the sufficiency of the evidence for a trial court's decision to issue a civil protection order, "we must determine whether, viewing the evidence in the light most favorable to [Wife], a reasonable trier of fact could find that [Wife] demonstrated by a

preponderance of the evidence that a civil protection order should issue." *R.C. v. J.G.*, 9th Dist. Medina No. 12CA0081-M, 2013-Ohio-4265, ¶ 7, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 11, and *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. A sufficiency challenge tests the adequacy of the evidence. *Eastley* at ¶ 11. In applying the sufficiency standard, "we neither resolve evidence conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Tucker,* 9th Dist. Medina No. 14CA0047–M, 2015–Ohio–3810, ¶ 7, quoting *State v. Jones,* 1st Dist. Hamilton Nos. C–120570, C–120571, 2013–Ohio–4775, ¶ 33.

{¶7} The issuance of a domestic violence civil protection order is governed by R.C. 3113.31, which allows a court to grant a protection order after a full hearing "to bring about a cessation of domestic violence against the family or household members." R.C. 3113.31(E)(1). "The purpose of the civil protection order is not to address past abuse." *Wetterman v. B.C.*, 9th Dist. Medina No. 12CA0021-M, 2013-Ohio-57, ¶ 11. Rather, protection orders are intended to prevent further domestic violence. *Felton v. Felton*, 79 Ohio St.3d 34, 41 (1997). As such, "even with established past abuse there must be some competent, credible evidence that there is a present fear of harm." *McElroy v. McElroy*, 5th Dist. Guernsey No. 15 CA 27, 2016-Ohio-5148, ¶ 38. Nevertheless, "[e]vidence of past abuse * * * is relevant and may be an important factor in determining whether there is a reasonable fear of further harm." *Wetterman* at ¶ 12.

{¶8} Husband contends that Wife failed to present any evidence that she or C.P. were in danger of future domestic violence. Specifically, he argues that even if the alleged events had occurred, they happened one, two, or three years prior to Wife's filing of her petition for a domestic violence civil protection order and that the alleged incidents involving C.P. did not constitute domestic violence. Moreover, since the record reflects no evidence of any further

incidents and contains no evidence that Wife feared she or C.P. were in danger of future abuse, Husband argues that Wife did not show that Wife or C.P. were in danger of further domestic violence.

{¶9} In this case, the trial court issued the domestic violence civil protection order based on the determination "that the [Wife] or [Wife]'s family or household members are in danger of or have been a victim of domestic violence or sexually oriented offenses as defined in R.C. 3113.31(A) committed by [Husband]" and that the "orders are equitable, fair, and necessary to protect" Wife and C.P. from domestic violence. In making this determination, the trial court made the following factual findings:

> [Wife] testified that, in May of 2014, [Husband] dragged her down the stairs by her hair. [Husband] denies this. The court finds the [Wife] to be credible on this issue. [Wife] further testified, and her Mother confirmed, that [Husband] had slept naked with [Wife]'s three year old daughter. [Husband] also denies this. The court finds [Wife] and her witness to be credible on this issue.

These findings implicate R.C. 3113.31(A)(1)(a), (A)(1)(c), and (A)(1)(d), which define "domestic violence" as "[a]ttempting to cause or recklessly causing bodily injury," "[c]ommitting any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code," and "[c]ommitting a sexually oriented offense," respectively.

{¶10} The relevant testimony at the evidentiary hearing was as follows: Wife testified that in October of 2014 she found Husband naked in bed with C.P., who was wearing clothing at the time. Wife moved out of the shared home for about two weeks following the alleged incident. Although children's services investigated the incident, that investigation found the allegation to be unsubstantiated. Wife moved back in with Husband when he agreed to counseling. She continued to live with Husband for another seven months.

**{¶11}** Wife also testified that in May of 2013, Husband dragged her down the stairs by her hair during an argument. She stated that she called the Springfield Police and Husband was issued a warning for domestic violence. However, upon cross-examination she stated that the police did not write a report and that she did not have any medical reports or pictures from the incident. After the alleged incident, Wife continued to live with Husband until May of 2015.

**{¶12}** Wife further testified that in June or July of 2015, she stopped letting Husband see C.P. and that, as a result, he started texting Wife and Wife's mother inquiring about Wife and C.P.'s location. Wife also stated that Husband called the sheriff to check on C.P. Wife stated that Husband knows where she works, but has never come to her workplace to see her or to inquire about C.P. Wife did not testify that Husband had made any threats toward her or C.P. or that she feared Husband would commit a future offense of domestic violence with respect to Wife or C.P. Wife only stated that she felt unsafe because Husband was trying to find C.P.

**{¶13}** Wife's mother also testified at the evidentiary hearing. She stated that she had witnessed three separate inappropriate incidents between Husband and C.P. First, she stated that she witnessed Husband lying naked on a couch while C.P. was lying fully clothed on the other side. C.P. was approximately one-and-a-half years-old at the time. Second, about six months after the first incident, she saw Husband lying naked in C.P.'s bed with C.P. fully clothed next to him. Wife's mother could not remember if he had a blanket covering him or not, but did remember that the door to C.P.'s bedroom was open. Wife's mother further stated that Husband would cover himself if she walked into the room. She also stated that Husband "made a point to walk around, go to the bedroom, to the bathroom, no clothes on and [C.P.] was there at the time." The third incident that Wife's mother stated she witnessed occurred when C.P. was almost three-years-old. She stated that she saw Husband lying on the couch with no clothes on with C.P.

{¶14} Wife's mother testified that after the third incident, she made a complaint to the children's services board. Children's services investigated and found the allegations unsubstantiated. Wife's mother then testified that Husband had pushed Wife down the stairs, but other than that incident, Husband had not threatened Wife and Wife had not told her of any other incidents where Husband had physically harmed Wife. Wife's mother did not testify that she feared Husband would commit a future offense of domestic violence against Wife or C.P.

{¶15} Husband also testified at the evidentiary hearing. Husband denied ever striking Wife, pulling her down the stairs by her hair, or threatening Wife in any way. He also denied ever being naked with C.P. or inappropriately touching her. Husband did state that he attempted to contact Wife after their split because he was worried about C.P.'s safety and well-being, but that he had never threatened Wife. He also stated that he knows where Wife works and where Wife's mother lives, but has not gone to either place in an attempt to see Wife or C.P.

{¶16} After considering the record in this matter, we conclude that although the facts in this case are troubling, no evidence was presented that would support the conclusion that Wife was at risk for any future abuse. The incident between Wife and Husband occurred more than two years before Wife filed her petition for a domestic violence civil protection order and Wife testified that no further incidents of domestic abuse occurred despite the parties living together for an additional two years. Wife also testified that although Husband knows the location of her work and her mother's house, Husband has not made any attempt to approach Wife at work nor has he attempted to approach Wife at Wife's mother's house. The only contact between Wife and Wife's mother and Husband was Husband's text messages concerning the location of C.P. Furthermore, neither Wife, nor Wife's mother, nor Husband testified that Husband had made any threats toward Wife or that they believed Husband would commit a future act of domestic

violence with respect to Wife. *See M.H. v. J.H.*, 9th Dist. Medina No. 15CA0031-M, 2015-Ohio-5178, ¶ 13-15 (reversing a trial court's issuance of a domestic violence civil protection order where there was no indication from the testimony that the petitioner believed the respondent would act violently toward her if there was not a protection order in place). Therefore, viewing the evidence in a light most favorable to Wife, we conclude that although a past act of domestic violence may have occurred, there was insufficient evidence presented during the hearing from which the trial court could have found by a preponderance of the evidence that Wife was in danger of future domestic violence. *See Solomon v. Solomon*, 7th Dist. Mahoning No. 03 MA 204, 2004-Ohio-2486, ¶ 27 ("Merely finding that there were *past* acts of domestic violence, without anything more, is not enough to warrant a *present* civil protection order."); *see also Gannon v. Gannon*, 6th Dist. Wood No. WD-07-078, 2008-Ohio-4484, ¶ 39 ("[A] finding of statutory domestic violence may not be based solely on remote events, but must be premised on conduct current enough that the fear engendered is current.")

{¶17} Husband also argues that no evidence was presented during the hearing showing that Husband committed any act of domestic violence against C.P. or that C.P. was at risk for any acts of future domestic violence. With regard to C.P., the trial court found Wife and Wife's mother's testimony "that Husband slept naked with C.P." to be credible. Although the trial court did not specify what act of domestic violence that Husband was found to have committed against C.P., the trial court's finding seems to implicate either R.C. 3113.31(A)(1)(c), which defines domestic violence as "[c]ommitting any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code," or R.C. 3113.31(A)(1)(d), which defines domestic violence as "[c]ommitting a sexually oriented offense." Accordingly, we will address each subsection in turn.

{¶18} Husband contends no evidence was presented at the hearing which would cause C.P. to be found to be an abused child. Although this Court finds the facts in this case troubling, we are constrained by the statutory requirements of R.C. 3113.31. In this case, the only evidence presented relevant to the inquiry of whether C.P. was an abused child was testimony from Wife and Wife's mother alleging that Husband had sat unclothed next to C.P. on a couch and in C.P.'s bed and that Husband had been found sleeping unclothed with C.P. in C.P.'s bed while C.P. was clothed. Although Husband denies any of the incidents occurred, the trial court found Wife and Wife's mother's testimony credible. An "abused child," as defined by R.C. 2151.031, includes any child who is the victim of sexual activity. R.C. 2151.031. However, assuming these incidents did occur, they do not constitute sexual activity. *See* R.C. 2907.01. Sexual activity is statutorily defined as "sexual conduct or sexual contact, or both." R.C. 2907.01(C). "Sexual conduct" is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another." R.C. 2907.01(A). "Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶19} In this case, neither Wife nor Wife's mother alleged that they had witnessed Husband commit any act of sexual activity with respect to C.P., nor did they testify that they believed Husband had committed any such act with respect to C.P. Wife stated only that she saw Husband sleeping unclothed in C.P.'s bed where C.P. was clothed and also sleeping and that "he should have never slept with [C.P.] naked." Wife's mother affirmatively stated that she never

saw Husband touching C.P. inappropriately and that C.P. was always wearing clothes. Moreover, Wife's mother stated that Husband "made a point to walk around, go to the bedroom, to the bathroom" with no clothes while in the presence of C.P. and Wife's mother and that C.P.'s bedroom door had remained open while Wife's mother was present in the home. Accordingly, after a thorough review of the record, we conclude that although the facts in this case are concerning, no evidence presented during the hearing demonstrated by a preponderance of the evidence that Husband had committed an act with respect to C.P. that would cause C.P. to be found to be a victim of sexual activity and, therefore, an abused child.

{¶20} Husband next argues that no evidence was presented at the hearing that Husband committed a sexually oriented offense with respect to C.P. Once more, although we find the facts in this case troubling, we are constrained by the statutory requirements of R.C. 3113.31. A sexually oriented offense requires some form of sexual activity, solicitation to engage in sexual activity, or other act committed with sexual motivation. *See* R.C. 2950.01. As discussed above, neither Wife nor Wife's mother alleged that they had witnessed Husband commit or believed Husband had committed any act of sexual activity with respect to C.P. Moreover, neither Wife nor Wife's mother testified that they believed Husband's nudity in C.P.'s presence was sexually motivated. The trial court's only finding with regard to C.P. was "that [Husband] had slept naked with [C.P.]." Accordingly, after a thorough review of the record, we conclude that no evidence presented during the hearing on Wife's petition demonstrated by a preponderance of the evidence that Husband committed a sexually oriented offense with respect to C.P.

{¶21} Therefore, as we have determined that there was insufficient evidence in the record to support the trial court's finding "that [Wife] or [Wife]'s family or household members are in danger of or have been a victim of domestic violence or sexually oriented offenses as

defined in R.C. 3113.31(A) committed by [Husband]," we conclude that the trial court erred in issuing the domestic violence civil protection order in this case.

{¶22} Accordingly, we sustain Husband's first and second assignments of error.

**Assignment of Error III**

**The trial court's decision to grant a Civil Protection Order was against the manifest weight of the evidence.**

{¶23} In his third assignment of error, Husband argues that the trial court's decision was against the manifest weight of the evidence. However, our resolution of Husband's first and second assignments of error render his third assignment of error moot and we decline to address it. *See* App.R. 12(A)(1)(c).

III.

{¶24} Having sustained Husband's first and second assignments of error, we reverse the judgment of the Summit County Court of Common Pleas, Domestic Relations Division, and remand this matter with instructions that the trial court vacate the domestic violence civil protection order.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____

JULIE A. SCHAFER
FOR THE COURT

CARR, P. J.
CONCURS.

HENSAL, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

LESLIE S. GRASKE, Attorney at Law, for Appellant.

KRISTINA BELMONTE, Attorney at Law, for Appellee.