[Cite as *E.B. v. J.B.*, 2021-Ohio-776.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

E. B.

     Appellee

     v.

J. B.

     Appellant

C.A. No.     19CA0071-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.     18 DV 0205

DECISION AND JOURNAL ENTRY

Dated: March 15, 2021

TEODOSIO, Judge.

{¶1}    J.B. appeals the judgment of the Medina County Court of Common Pleas, Domestic Relations Division, overruling his objections and affirming the issuance of a domestic violence civil protection order. We affirm.

I.

{¶2}    In September 2018, during the pendency of a divorce action between the parties, E.B. petitioned the trial court for a domestic violence civil protection order ("DVCPO") against her husband, J.B. An ex parte civil protection order was issued and a full hearing was scheduled.

{¶3}    By way of background, the parties lived separately during the pertinent timeframe, with E.B. occupying the marital residence, located on a cul-de-sac, while J.B. lived approximately 20 minutes away. The testimony at the full hearing largely involved two incidents. The first incident occurred at the beginning of September 2018, when J.B. texted to E.B. a photograph of a vehicle parked in the driveway of the marital residence in the early morning hours. By his own

testimony, he sent the photograph as evidence that her boyfriend was living with her after she had denied that accusation.

{¶4} The second incident occurred a few days later, after the ex parte DVCPO had been issued, but before J.B. had been served with the order. J.B. had parked his car at the end of the cul-de-sac to monitor and photograph the marital property. When E.B. returned home, she saw J.B.'s vehicle parked at the end of the street and drove up to vehicle in order to photograph and document his presence there. J.B.'s testimony also indicated that prior to the protection order, he would drive to the house approximately once a week.

{¶5} After the issuance of a full-hearing protection order, J.B. filed objections to the magistrate's decision, and a hearing on the objections was conducted by the trial court in February 2019. On September 16, 2019, the trial court entered judgment overruling the objections and adopting the magistrate's findings of fact and conclusions of law. J.B. now appeals, raising one assignment of error.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY FINDING RESPONDENT COMMITTED AN ACT OF DOMESTIC VIOLENCE BY PLACING PETITIONER BY THREAT OF FORCE IN FEAR OF IMMINENT SERIOUS PHYSICAL HARM AND/OR COMMITTING A VIOLATION OF R.C. 2903.211 AND BY DENYING RESPONDENT'S OBJECTION TO THE MAGISTRATE'S DECISION GRANTING A DOMESTIC VIOLENCE CIVIL PROTECTION ORDER.

{¶6} In his assignment of error, J.B. argues the trial court erred by finding that he had committed an act of domestic violence by placing E.B., by threat of force, in fear of imminent serious physical harm or that he had committed a violation of R.C. 2903.211. We disagree.

{¶7} "The decision whether to issue a protection order is within the discretion of the trial court." *W.B. v. T.M.*, 9th Dist. Lorain No. 19CA011474, 2020-Ohio-853, ¶ 8. "[A] trial court's decision to grant or deny a protection order is reviewed on appeal under a civil manifest weight standard." *Wetterman v. B.C.*, 9th Dist. Medina No. 12CA0021-M, 2013-Ohio-57, ¶ 8. "[B]efore an appellate court will reverse a judgment as against the manifest weight of the evidence in a civil context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice. Only in the exceptional case, where the evidence presented weighs heavily in favor of the party seeking reversal, will the appellate court reverse." *Boreman v. Boreman*, 9th Dist. Wayne No. 01CA0034, 2002-Ohio-2320, ¶ 10. Manifest weight of the evidence pertains to the burden of persuasion. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 19. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶8} "'When the trial court exercises its discretion, however, it must find that the petitioner has shown by a preponderance of the evidence that the petitioner or petitioner's family or household members are the victim of, or in danger of, domestic violence.'" *W.B. v. T.M.* at ¶ 8, quoting *Lundin v. Niepsuj*, 9th Dist. Summit No. 28223, 2017-Ohio-7153, ¶ 19. As defined in R.C. 3113.31(A)(1)(a), the phrase "domestic violence" means the occurrence of one or more of the following acts against a family or household member:

(i)     Attempting to cause or recklessly causing bodily injury;

(ii)    Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code;

(iii)   Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code;

(iv)     Committing a sexually oriented offense.

{¶9}     In the case sub judice, after the hearing, the magistrate issued a domestic violence civil protection order on the basis of R.C. 3113.31(A)(1)(a)(ii), finding that J.B. had "engaged in a pattern of conduct to knowingly cause [E.B.] to believe he would cause physical harm, and actually caused mental distress to her." In overruling J.B.'s objection to the civil protection order, the trial court found that the magistrate did not err in finding that J.B. engaged in an act of domestic violence as defined by R.C. 3113.31(A)(1)(a)(ii) by placing E.B. "by threat of force in fear of imminent serious physical harm and/or by committing a violation of R.C. 2903.211 (menacing by stalking)."

{¶10}   We note that the magistrate did not make a finding that J.B. placed E.B., by threat of force, in fear of imminent serious physical harm. Likewise, in ruling on J.B.'s objections, the trial court did not set forth any facts establishing a threat of force placing E.B. in fear of imminent serious physical harm. Rather, the crux of the protection order is based upon R.C. 2903.211, as acknowledged by E.B. in her brief to this Court. To the extent that J.B.'s brief focuses on the fear of imminent serious physical harm caused by a threat of force, we agree that there is no evidence to support such a finding.

{¶11}   R.C. 2903.211 sets forth the offense of menacing by stalking as follows:

(A)(1) No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person. In addition to any other basis for the other person's belief that the offender will cause physical harm to the other person or the other person's family or household member or mental distress to the other person or the other person's family or household member, the other person's belief or mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

(2) No person, through the use of any form of written communication or any electronic method of remotely transferring information, including, but not limited to, any computer, computer network, computer program, computer system, or telecommunication device shall post a message or use any intentionally written or verbal graphic gesture with purpose to do either of the following:

    (a) Violate division (A)(1) of this section;

    (b) Urge or incite another to commit a violation of division (A)(1) of this section.

{¶12} R.C. 2903.211(D) provides the following definitions:

(1) "Pattern of conduct" means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents, or two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents, directed at one or more persons employed by or belonging to the same corporation, association, or other organization. Actions or incidents that prevent, obstruct, or delay the performance by a public official, firefighter, rescuer, emergency medical services person, or emergency facility person of any authorized act within the public official's, firefighter's, rescuer', emergency medical services person's, or emergency facility person's official capacity, or the posting of messages, use of intentionally written or verbal graphic gestures, or receipt of information or data through the use of any form of written communication or an electronic method of remotely transferring information, including, but not limited to, a computer, computer network, computer program, computer system, or telecommunications device, may constitute a "pattern of conduct."

(2) "Mental distress" means any of the following:

    (a) Any mental illness or condition that involves some temporary substantial incapacity;

    (b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

{¶13} The "substantial incapacity" component of mental distress "does not mean that the victim must be hospitalized, or totally unable to care for herself.  Incapacity is substantial if it has

a significant impact upon the victim's daily life." *State v. Payne*, 178 Ohio App.3d 617, 2008–Ohio–5447, ¶ 9 (9th Dist.). This Court has held that evidence demonstrating that a petitioner felt compelled to alter normal routines and patterns of behavior due to respondent's conduct corroborates allegations of mental distress. *Noah v. Brillhart*, 9th Dist. Wayne No. 02CA0050, 2003-Ohio-2421, ¶ 16, citing *Akron v. Andrews*, 9th Dist. Summit No. 19383, 2000 WL 108818, *6 (Jan. 26, 2000). Mere mental stress or annoyance, however, does not constitute mental distress for purposes of the menacing by stalking statute." *W.B. v. T.M.*, 9th Dist. Lorain No. 19CA011474, 2020-Ohio-853, ¶ 10.

{¶14} Expert testimony is not necessary to establish that a victim experienced mental distress as a result of the offender's behavior in order to prove menacing by stalking. *State v. Hart*, 9th Dist. Lorain No. 00CA007543, 2000 WL 1824892, *3 (Dec. 13, 2000). "Rather, it is the function of the trier of fact to determine whether a victim suffered mental distress as a result of the offender's behavior. Furthermore, no evidence that psychological treatment has been undertaken is necessary." (Citation omitted.) *Id*.

{¶15} "[E]xplicit or direct threats of physical harm are not necessary to establish a violation of R.C. 2903.211(A). Rather, the test is whether the offender, by engaging in a pattern of conduct, knowingly caused another to believe the offender would cause physical harm or mental distress to him or her." *Noah* at ¶ 15.

{¶16} Pursuant to R.C. 2903.211(A)(1), it must therefore be proven either that: (1) E.B. believed that J.B. would cause her physical harm; or (2) J.B. actually caused E.B. mental distress. *See State v. Yoder*, 9th Dist. Wayne No. 15AP0017, 2016-Ohio-7428, ¶ 17, fn. 2. Under his assignment of error, J.B. argues that although E.B. gave testimony as to her emotional and mental states following his actions, the standard for mental distress was not met.

{¶17}   In its order overruling the objections, the trial court found that E.B.'s testimony that she felt nauseous and physically ill, coupled with her purchase of a handgun for her to conceal and carry, established both that she believed that J.B. would cause her physical harm and that he caused her mental distress.  The trial court further found that J.B.'s own testimony that he had parked down the street from the residence because he believed E.B. would be alarmed if she had seen him conducting surveillance established that he had knowledge that his actions could lead to E.B. believing he would cause her physical harm or could lead to her mental distress.

{¶18}   With regard to J.B. sending her the photograph of her friend's vehicle in her driveway, E.B. testified that it "greatly disturbed" her and that she was "freaked out by it."  She testified that upon discovering that J.B. was watching the residence from his vehicle she was "shaking so bad" and "felt very nauseous."  She thought the behavior was "very creepy" and that she was "very sick to [her]stomach physically, and [she] was very upset."  She also testified that she was "still very upset" and felt "very unsafe" and "threatened."

{¶19}   E.B. further testified that even though she already owned two handguns, she purchased a third, smaller handgun that she could conceal and carry because of "the escalation of things that are happening in this case."  She stated that she was "very concerned that [J.B.] was going to come back" and that he harbored "increased hostility" towards her since the trial court's last ruling."  When asked by counsel if she felt like she was in fear, or that her safety was compromised, she answered in the affirmative.

{¶20}   We reiterate that under a civil manifest weight of the evidence standard of review, this Court must review the record, weigh the evidence, consider the credibility of witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.  In weighing the evidence, we

must be mindful of the presumption in favor of the trial court's factual findings. *Lundin v. Niepsuj*, 9th Dist. Summit No. 26015, 2014-Ohio-1212, ¶ 12. The testimony supports the findings that E.B. was distressed to the point of physical illness and felt threatened and unsafe to the extent that she purchased a firearm that she could conceal and carry. Upon review of the record, we cannot conclude that the trial court clearly lost its way and created a manifest miscarriage of justice in determining that E.B. suffered "mental distress" as a result of J.B.'s conduct. The trial court's finding of "mental distress" was not against the manifest weight of the evidence.

{¶21} J.B. further argues that no pattern of conduct, as defined by R.C. 2903.211(D)(1), was established. He contends the single photograph he sent of the vehicle in the driveway, along with the single time that E.B. discovered him parked in the cul-de-sac as he watched the marital residence, do not establish a pattern of conduct. The trial court found that J.B.'s testimony that he repeatedly drove to the marital residence to observe it on an almost weekly basis, as well as the picture he sent to E.B. of her friend's vehicle in the driveway and the evidence that he had been watching the house from his car parked in the cul-de-sac, established a pattern of conduct.

{¶22} A "pattern of conduct" is defined as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents * * *." R.C. 2903.211(D)(1). "A court must take everything into consideration when determining if a respondent's conduct constitutes a pattern of conduct, even if some of the person's actions may not, in isolation, seem particularly threatening." *R.C. v. J.G.*, 9th Dist. Medina No. 12CA0081-M, 2013-Ohio-4265, ¶ 12, quoting *Guthrie v. Long*, 10th Dist. Franklin No. 04AP913, 2005–Ohio–1541, ¶ 12, quoting *Miller v. Francisco*, 11th Dist. Lake No.2002–L–097, 2003–Ohio–1978, ¶ 11, *overruled in part on other grounds, Davis v. DiNunzio*, 11th Dist. Lake No. 2004–L–106, 2005–Ohio–2883.

{¶23} A minimum of two incidents, closely related in time, are required to constitute a "pattern of conduct." Even limited to J.B.'s conduct in sending the driveway photograph and his surveillance of the marital property from the cul-de-sac, the trial court could reasonably conclude that the incidents were of the same character such that they constituted a pattern of conduct under the circumstances of this case. We do not conclude that this is a matter in which the trial court clearly lost its way and created a manifest miscarriage of justice, as the weight of the evidence supports a finding of a "pattern of conduct."

{¶24} The assignment of error is overruled.

III.

{¶25} J.B.'s assignment of error is overruled. The judgment of the Medina County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CALLAHAN, P. J.
CARR, J.
CONCUR.

APPEARANCES:

MICHAEL J. ASH, Attorney at Law, for Appellant.

DAVID V. GEDROCK, Attorney at Law, for Appellee.